BRASCHLER ET AL. *v.* REVIEW BOARD OF THE INDIANA
EMPLOYMENT SECURITY DIVISION ET AL.

[No. 17,943. Filed February 15, 1950. Rehearing denied
March 13, 1950. Transfer denied May 12, 1950.]

Crumpacker, J., not participating.

*Albert W. Ewbank,* of Indianapolis; and *Leon M. Despres* (of counsel), of Chicago, Ill., for appellants.

*J. Emmett McManamon,* Attorney General, *James A. Watson,* Deputy Attorney General, *Glen F. Kline,* Chief Counsel, Employment Security Division; and *Crumpacker & Friedrich,* of Hammond, for appellees.

ROYSE, J.—For brevity and clarity the appellants will hereinafter be referred to as the employees, appellee Review Board of the Indiana Employment Security Division as the Board, and appellee Hammond Publishing Company as the employer.

We believe a better understanding of the question presented by this appeal can be had by setting out in full the Statement of Fact and the Findings and Conclusions of the Board:

"Statement of Fact:

"The employer is a corporation engaged in the publishing of a daily and Sunday newspaper at Hammond, Indiana. The claimants were employed in the composing room of the employer's establishment and were all members of Local No. 16 of the International Typographical Union, which was the bargaining agent for the employees of the composing room. The employer and the International Typographical Union had operated under a closed shop agreement with respect to the working conditions of the employees of the composing room since 1906. The pattern for their wages and other conditions of employment had always been established by the contracts entered into between the International Typographical Union and the Chicago Newspaper Publishers Association, although the employer was not a member of such association. A labor dispute had existed for sometime prior to November 26, 1947, between the Chicago Publishers Association and the International Typo-

graphical Union over the terms and conditions of a new contract which they were attempting to affect.

"The employees of the composing room of this employer's establishment apparently became dissatisfied with the progress of the dispute between the Chicago Newspaper Publishers Association and the International Typographical Union, particularly with respect to an increase in wages which the employees were desirous of obtaining. On the morning of November 26, 1947, at about 10:00 A.M. the employer's composing room employees tendered the employer with an ultimatum that unless their wage demands were met within 45 minutes they would discontinue working and strike. At 10:45 A.M. the employer had not agreed to the wage increase demanded and all the employees in the composing room walked out on strike and established a picket line at the employer's establishment which was maintained thereafter. A few meetings were held thereafter between the employer and representatives of its composing room employees in an effort to affect a settlement of the dispute, none of which were successful, and the last meeting was held on January 26, 1948.

"The employer had apparently anticipated the strike of its composing room employees because it immediately changed over the method of printing and publishing its paper from the commonly accepted method of setting type to a photo engraving process. Publication of the newspaper continued without interruption. During the ensuing period to and including the date of the Referee hearing, with allowances made for variable factors, the advertising lineage and circulation remained substantially the same. The labor force of the employer normally consisted of approximately 168 employees, 68 of whom were employed in the composing room as linotype operators and compositors. From and after the inception of the strike, these 68 linotype operators and compositors performed no services for the employer, but the employer engaged 20 additional workers who performed typing and other related services in the photo engraving process. The employer did not replace any of the

linotype operators or compositors and since the walkout very little, if any, work was done in setting type with linotype machines or hand composing which was the ordinary method of preparing the stereotype plates for the publishing of the paper. Furthermore, the employer at all times would have been willing for the employees of the composing room to have continued to work under the same conditions and at the same wages at which they had been employed prior to November 26, 1947, but being unwilling to meet the demands of the employees of the composing room, the photo engraving process of publishing the paper was used throughout the period herein involved to and including July 7, 1948, the date of the Referee hearing."

"Findings and Conclusions:

"The Review Board finds that a labor dispute existed between the employer and the employees of the composing room from sometime prior to November 26, 1947, to and including the date of the Referee hearing on July 7, 1948, and as a result of such labor dispute the composing room employees stopped working at 10:45 A.M., November 26, 1947, and that the unemployment of the claimants herein, all of whom were employees in the composing room, was due to such labor dispute.

"The Review Board further finds that a work stoppage existed in the composing room throughout the period herein in issue in that the type for the preparation of the stereotype plates was not set by the linotype machine and hand composing method, but in lieu thereof, were prepared in an entirely different method called the photo engraving process; that the work stoppage in the composing room was a stoppage of work within the meaning of the Indiana Employment Security Act and that the claimants and each of them herein were unemployed due to such stoppage of work which was due to a labor dispute in which they were interested and participating.

"The Review Board further finds that the employer was willing to continue its operations as in the past had the employees in the composing room

been willing to have continued to work at the same wages and under the same conditions at which they were formerly employed; that the employees of the composing room, the claimants herein, were unwilling to continue to work under such conditions and in lieu thereof struck, and that in so doing their resulting unemployment was due to their own fault and in the light of Section 101 of the Indiana Employment Security Act and the decision of the Supreme Court of Indiana in Walter Bledsoe Coal Company and others versus the Review Board of the Employment Security Division, 221 Indiana 16, 46 N. Eastern 2nd, 447, the claimants do not come within that class of unemployed individuals whom the legislature intended to protect with the passage of the Indiana Employment Security Act.

"The Review Board further finds that although the employer continued producing its paper without interruption, it did not replace the claimants herein and there being no evidence to show that the employer intended to permanently substitute the photo engraving process for the linotype machine and hand composing method of preparing the stereotype plates, it is reasonable to infer that the employer would have reverted to the old process had the employees of the composing room, the claimants herein, been willing to return to work under the same conditions and at the same wages at which they were formerly employed. Thus, we are of the opinion that the claimants herein and each of them were unavailable for available suitable work during the period herein involved.

"For the above reasons the Review Board finds that the claimants and each of them were ineligible for waiting period or benefit rights during the period from November 26, 1947, to and including July 7, 1948."

There is but one real question in this appeal. It is: Does § 1504 [§ 52-1539c, Burns' 1933 (1949 Supp.)] of the Indiana Employment Security Act, under the facts disclosed by the record and the findings of the

Board render the employees ineligible for the benefits provided by the above mentioned Act? This is the same question which we decided this week in the case of *Fred O. Blakely, et al.* v. *Review Board of the Indiana Employment Security Division and W. B. Conkey Company* (1950), 120 Ind. App. 257, 90 N. E. 2d 353.

By agreement of the parties that case and this case were argued before this court at the same time. The contentions of the parties and the authorities relied upon were practically the same in both cases.

But, unlike it did in that case, in this case the Board did not find as to whether or not the employer's composing room constituted such a separate branch of work, etc., as would bring the employees within the second proviso of the above referred to section of the statute. In this court the contention of all the parties was based on this theory. In our opinion the evidence in the record and certain of the findings of the Board would have sustained a finding that the employer's composing room was such a separate department and the employees' unemployment resulted from a work stoppage caused by a labor dispute which interfered with the normal operation of such department. However, it seems to us from other findings of the Board that it may have based its denial of benefits to the employees on other disqualifying provisions of the statute, §§ 52-1538a, b, 52-1539a, Burns' 1933 (1949 Supp.). If this be true the evidence in the record would not sustain the Board's decision.

We may not speculate as to the findings upon which the Board based its action. Nor can we direct the Board to amend or change its findings. *International Detrola Corporation* v. *Hoffman* (1947), 224 Ind. 613, 618, 70 N. E. 2d 844; *Heflin* v. *Red Front Cash & Carry Stores, Inc.* (1948), 225 Ind. 517, 523, 524, 75 N. E. 2d 662.

The decision of the Board is reversed and this cause is remanded to the Board for further proceedings in accord with the views herein expressed. In the Board's discretion, it may, on its own motion or on the request of any of the parties, hear such additional evidence as may be deemed pertinent.

Crumpacker, J., not participating.

NOTE.—Reported in 90 N. E. 2d 362.