HEFLIN *v.* RED FRONT CASH & CARRY STORES, INC.

[No. 28,389. Filed December 1, 1947. Rehearing Denied January 6, 1948.]

*George F. Zimmerman,* of Evansville, for appellant.

*Slaymaker, Merrill, Locke & Reynolds,* of Indianapolis, for appellee.

STARR, J.—This case was ordered transferred from the Appellate Court for the sole reason that this court disapproved of the mandate of said court contained in its original opinion reversing the award of the Industrial Board of Indiana. That opinion was written by Judge Royse on behalf of the Appellate Court and is found in 73 N. E. (2d) 494.

We agree exactly with the original opinion except the mandate found therein. We therefore adopt as our own and as part of our opinion said original opinion of the Appellate Court, except the mandate contained therein, which is in words and figures as follows:

"This is an appeal from an award of the Full Industrial Board of Indiana denying appellant compensation for injuries resulting from an accident arising out of and in the course of his employment by appellee.

"Appellee has raised several technical objections to appellant's brief. We have experienced no difficulty in understanding the question which appellant raises. There has been at least a good-faith effort to comply with the rules of the Supreme Court in the preparation of his brief. *Western Machine Works* v. *Edwards M. & T. Corp.* (1945), 223 Ind. 655, 63 N. E. (2d) 535; *Bryan* v. *Yoder* (1947), *ante*, p. 57, 71 N. E. (2d) 474.

"Under proper assignment of error appellant contends the undisputed evidence discloses appellant was injured as the result of an accident arising out of and in the course of his employment by appellee, and therefore the award of the Full Industrial Board is contrary to law. This requires a consideration of the evidence. Appellant was the only witness in this case. Appellee has not objected to or corrected the condensed recital of this evidence as set out in appellant's brief. Therefore we take it as correct. It is as follows:

"*DIRECT EXAMINATION:* About Feb. 26, 1946 I was manager of the Red Front Grocery Store located at Mt. Vernon, Indiana and was manager, butcher and anything that came handy, also unloading trucks and everything. There were two employees in the store besides myself. I was expected to do anything that happened to come along.

"Part of my duty was to assist in unloading purchases that came into the store. On the 26th day of February a truck came in and backed up to the unloading window and we had *1500* pound bags of potatoes on there and I unloaded about three or four, and about the fourth I felt this hernia give down completely. The window was at the side of the rear and the truck was backed up to the window. I was inside the store and the truck man handed the sacks through the window, and I took them and set them aside in the store.

The driver set the potatoes upon the window sill about a two foot drop from the floor and I took them off and lifted them down to where I set them about four feet to the side. The sacks weighed 100 pounds. I had a hernia which was a moderate hernia. I had it all my life, didn't wear a belt. I felt a sharp pain and it protruded to about three times its normal size. I sat down the rest of the day and the next day I went to see Dr. Oliphant and he advised me that an operation was the only solution. I was operated on at St. Mary's Hospital at Evansville by Drs. H. C. Ruddick and Oliphant.

"I remained in the hospital 11 days. After I came out of the hospital I was not able to work for three months. The doctor released me on June 8th and I started training with the railroad then as a telegraph operator and ticket agent.

"I notified the Red Front Cash & Carry Stores of my injury the next day after it occurred. The supervisor called me over the phone and I notified them of my injury. The next day the supervisor came down and I told him how it occurred. I told him I would have to go to the hospital to be operated on, and he told me to keep it quiet and not let anybody know about it as he didn't want to worry the owner of the stores.

"I paid Dr. Oliphant for his services $28.00 and $150.00 for Dr. Ruddick. I paid the hospital $106.55. I was unable to work until June 8th and then I was not able to work at all but did take this light job the latter part of June. I am now completely healed.

"*CROSS-EXAMINATION:* The hernia was on the left side. I had had it as far back as I can remember. It was a congenital hernia.

"I had unloaded potatoes before for about 12 years. I had unloaded them in the same way. Nothing unusual happened, such as the bag slipping or falling. *It was just as I lifted it off the window, the weight of the bag. I first noticed it right after it happened when I lifted the potatoes down. The boy in the store had to finish unloading the trucks.*

"I told Mr. Burton I was going to have to go to the hospital and be operated on. Tom Lambert is president and general manager of the defendant Red Front Stores. I wrote to Mr. Lambert April 25, 1946 telling him I had been in the hospital for an operation resulting from a strain received while unloading one of the trucks at my store. I told him I had informed Charles Burton of the accident and he told me he couldn't do anything. He said I couldn't draw compensation because I did not get hurt in the store. I told him I did get hurt while unloading the truck. I told him my hospital bill was $106.55 and my doctor bill $178.00. I asked him to start proceedings on my compensation and hospital and doctor bills, and asked him to write me and let me know why he thought I was not entitled to compensation.

"*RE-DIRECT EXAMINATION:* I first talked about my injury to Charles Burton, the supervisor of the Indiana District of the stores who visited the store and saw that they got what they wanted and everything was in order. I told him I would have to have the operation. He asked me not to tell anybody, not even the truck drivers. I talked to Mr. Lambert by phone twice and wrote him. He told me that it was in the hands of the insurance company and gave me its name." (Our emphasis.)

"In considering the evidence in this case we are cognizant of the well-established rule that this court will not disturb a finding of fact made by the Industrial Board unless the evidence with all inferences reasonably deducible therefrom is of such conclusive nature as to force a contrary conclusion.

"Indiana long ago adopted the majority rule, that where an employee afflicted with disease receives a personal injury under such circumstances that he might have obtained compensation under a Workmen's Compensation Act on account of the injury had there been no disease involved, but the dis-

ease is materially aggravated or accelerated by the injury, resulting in disability or death earlier than would otherwise have occurred, and the disability or death does not result from the disease alone progressing naturally as it would have done under ordinary conditions, but the injury, aggravating and accelerating its progress, materially contributes to hasten its culmination in disability or death, there may be an award under the Workmen's Compensation Act. *In re Bowers* (1917), 65 Ind. App. 128, 133, 134, 116 N. E. 842, and authorities there cited; *Indian Creek Coal, etc., Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N. E. 519, 120 N. E. 709; *Puritan Bed Spring Co.* v. *Wolfe* (1918), 68 Ind. App. 330, 120 N. E. 417; *Krenz* v. *Ferguson Coal Company* (1926), 85 Ind. App. 347, 154 N. E. 35; *State* v. *Gageby* (1933), 95 Ind. App. 681, 184 N. E. 190; *The Studebaker Corp.* v. *Jones* (1937), 104 Ind. App. 270, 10 N. E. (2d) 747.

"In the case of *Haskell, etc., Car Co.* v. *Brown* (1918), 67 Ind. App. 178, 117 N. E. 555, this court defined the word "accident" as used in our Workmen's Compensation Act, as "any unlooked for mishap or untoward event not expected or designed."

"In *Indian Creek Coal, etc., Co.* v. *Calvert, supra,* this court, after an exhaustive review of English and American cases, approved the Haskell definition and further held the term "Personal injury," as used in the Workmen's Compensation Act, had reference not to some break in some part of the body or some wound thereon, but rather to the consequences or disability that results therefrom. To the same effect—*Puritan Bed Spring Co.* v. *Wolfe, supra; Terre Haute, etc., Mfg. Co.* v. *Wehrle* (1921), 76 Ind. App. 656, 132 N. E. 698; *The Studebaker Corp.* v. *Jones, supra.*

"In several of the cases cited herein the facts were quite analagous to those in the instant case. In the case of *Krenz* v. *Ferguson Coal Company, supra*, this court reversed a denial of an award where the facts were not as clear and definite as they are here.

"In our opinion the evidence in this case leads inescapably to the sole conclusion, that appellant █ was entitled to an award under our Workmen's Compensation Act."

Immediately following the portion of the opinion which is above set out the Appellate Court re-█ versed the award and instructed the said board to enter an award in favor of appellant.

The Appellate Court was in error when it so ordered the Industrial Board to enter an award in favor of the appellant. The right of the Appellate Court to review an award of the Industrial Board is given by § 40-1512, Burns' 1940 Replacement. Under this statute the review is for errors of law. This statute merely gives the Appellate Court authority to determine whether, upon the facts and law, the action of the board is based upon an error of law or is wholly unsupported by the evidence or clearly arbitrary or capricious. This particular statute does not empower the Appellate Court to order the board to enter an award. By this statute the legislature did not undertake to vest in the court the administrative function of determining whether or not an award should be granted. *Ma-King Co.* v. *Blair* (1925), 271 U. S. 479, 70 L. Ed. 1046, 46 S. Ct. 544; Vom Baur, *Federal Administrative Law*, Vol. 1, § 44; *Russell* v. *Ely & Walker Dry Goods Co.* (1933), 332 Mo. 645, 60 S. W. (2d) 44; *King* v. *Alabam's Freight Co.* (1932), 40 Ariz. 363, 12 P. (2d) 294; *Paramount Pictures, etc.* v. *Ind. Com.* (1940), 56 Ariz. 217 (Opinion on Rehearing, 56 Ariz. 352), 106 P. (2d)

1024; *McGarry* v. *Industrial Commission* (1925), 64
Utah 592, 232 P. 1090; *Cole* v. *Sheehan Construction
Co.* (1944), 222 Ind. 274, 53 N. E. (2d) 172; *Cole* v.
*Sheehan Construction Co.* (1944), 115 Ind. App. 303,
57 N. E. (2d) 625; 42 Am. Jur., *Public Administrative
Law,* § 247. Had this statute attempted to confer upon
the Appellate Court the right to make or order an
award which, in its opinion, the Industrial Board should
have rendered in any particular case where the evidence
is undisputed and all one way, it is doubtful whether
the same would have been constitutional. Compare
*In re Northwestern Indiana Tel. Co.* (1930), 201 Ind.
667, 171 N. E. 65. This question, however, is not now
before us.

It is our opinion that upon the reversal of this award
the cause should be remanded to the Industrial Board
of Indiana and upon its being so remanded the board
should have the right to proceed with the same in a
manner not inconsistent with the views herein ex-
pressed. If the present mandate were allowed to stand
it would preclude the board from hearing further evi-
dence if it so desired or from taking any steps other
than to enter a final award. This would be an invasion
of the normal rights and duties which said board has
prior to the making of any award. It is idle to assume
that the board would disregard the directions of the
reviewing court. "For purposes of judicial finality
there is no more reason for assuming that a Commis-
sion will disregard the direction of a reviewing court
than that a lower court will do so." *Fed. Power Comm'n*
v. *Pacific Co.* (1938), 307 U. S. 156, 160, 83 L. Ed. 1180,
1183, 59 S. Ct. 766, 768.

This cause is remanded to the Appellate Court with
instructions to reverse the said award of the Indus-
trial Board of Indiana and to remand this proceedings

to that board with directions for that body to vacate and set aside its award and to proceed further in a manner not inconsistent with the views herein expressed.

NOTE.—Reported in 75 N. E. (2d) 662.