ARMES *v.* THE PIERCE GOVERNOR COMPANY, INC.

[No. 18,202.   Filed October 19, 1951.]

*Fansler, Fauvre, Young & Chambers,* of Indianapolis, for appellant.

*J. Emmett McManamon,* Attorney General, *Walter O. Lewis,* Deputy Attorney General, and *Hurley Drake,* of Indianapolis (of counsel), Amici Curiae.

BOWEN, J.—This is an appeal from an order of the Full Industrial Board denying the petition of appellant to set aside and vacate a previous order which had been entered denying appellant compensation from the so-called "second injury fund," as provided in the Indiana Workmen's Compensation Act, § 40-1308, Burns' 1940 Replacement (1951 Supp.) ; Acts 1929, ch. 172, § 33a, as added by Acts 1949, ch. 250, § 1, p. 848.

The appellant suffered an injury to his left eye in an accident arising out of and in the course of his

employment with The Pierce Governor Company, Inc. A report of such injury and accident was filed with the Industrial Board, and the said employer filed an agreement for compensation whereby appellant was to receive $23.10 per week until such disability terminated. Subsequently, the appellant filed an affidavit requesting a lump sum settlement for the injury to his left eye, and a supplemental agreement was entered into between the appellant and his employer by and through the insurance carrier and its attorney, which agreement was approved by the Industrial Board, and provided for payment for temporary total disability for appellant's permanent loss of sight of the left eye. Three days after the approval of this agreement by the Industrial Board, the attorney for the insurers of the employer filed a claim for compensation for appellant from the "second injury fund." In such petition, it was alleged that the appellant, since childhood, had been industrially blind in his right eye, and that since the time of the injury to his left eye in the employment of The Pierce Governor Company, Inc., he has been and is industrially blind, and submitted in such petition the report of the employer's physician, Dr. E. O. Alvis, eye specialist, which report certified that any work by appellant in an industrial plant would be hazardous. Such petition requested an award of additional compensation for total permanent impairment out of the "second injury fund." Such petition also contained the final report and bill of the Industrial Board's surgeon, Dr. Joseph Larrimore, showing the nature of the services performed for appellant.

Thereafter, on October 16th, the Industrial Board, through its hearing member, ordered appellant to be examined by one Dr. John R. Flick. On October 21st,

Dr. Flick made a written report to the board. He did not appear before the board, and the board did not provide for a notice to the appellant of a time or place where the doctor's testimony would be heard. No request was made on behalf of the appellant for the cross-examination of this doctor, and he was not cross-examined concerning such report. His written report was as follows:

"(STAMP)
FILED OCT 23 1950

INDUSTRIAL BOARD OF INDIANA

Oct. 21, 1951

Industrial Board of Indiana

Re: John R. Armes

Dear Sirs:

Pursuant to your order this patient was seen in my office Oct. 20, 1950 at 1:00 p.m. He stated at that time that he had received an injury to the left eye on May 12, 1949 while employed at the Pierce Governor Co., Anderson, Indiana.

According to his history he was struck in the eye by a flying piece of metal of sufficient size to protrude from the front of the eyeball. He was seen in turn by the first aid nurse, Dr. Larramore, and Dr. Edwin C. Dyar. The two latter took him to surgery, removed the protruding piece of metal and attempted to repair the large laceration of the front of the eyeball. They gave him a very poor prognosis of the eye at that time. Following this his eye healed but a cataract developed, further worsening his vision. On Dec. 10, 1949, a cataract extraction was done on the left eye. Following this second operation the vision in the eye became somewhat better.

The patient states that vision of the right eye has been poor since age four when the fact was discovered in a school examination. He also states

that at no time since his first injury has he been able to do any useful work or even to get around unaided.

Examination revealed visual acuity of less than 20/400 right eye and plus 6.00 sphere; 20/40-2 with plus 12.25 plus 175 cyl ax 90 left eye. Intraocular tension was normal in both eyes tonometrically. Neither fundas showed any remarkable pathology. Refraction improved the vision of the right eye to 20/100 with minus 75 plus 6.50 cyl ax 105. The left eye could not be improved above 20/40.

Diagnosis: Right eye, amblyopia due to high anisometropia.

Left eye, aphakia, traumatic.

The facts in this case seem to be clear enough as regards the pathology existing and the cause-effect relationships. The uncertainty in dealing with its disposition lies in the facts of individual variation.

This man has a corrected vision of 20/40 or thereabouts and considers himself unfit for any employment. I have a patient from that same town who has two aphakic eyes with nystagmus and a corrected vision of less than 20/200 but who will scarcely admit a handicap, holds a good job supporting a wife and child. We are often in medicine forced to the conclusion that it is not what a man has that counts but what he does with it. That this man is unable to overcome his handicap is obvious, that he cannot be forced to is also obvious.

A precise statement of impairment in any case of aphakia of one eye is often very difficult for an oculist to make. I consider that this man has had excellent treatment and that he is very fortunate to have retained the vision of his eye."

Following the receipt of the report of this physician appointed by the Industrial Board on December 7, 1950, without hearing any additional evidence, and on the basis of the aforementioned medical reports, the board, by and through its hearing member, denied

appellant's claim for compensation out of this special fund known as the "second injury fund." No appeal was filed to the full board, nor was any request presented on behalf of the appellant to appeal to the full board, nor to present additional evidence, nor were any further steps taken on behalf of the appellant.

On January 23, 1951, after the time for appeal to the Full Industrial Board had expired, the appellant appeared by his subsequent attorney of record in this appeal, and filed a petition to set aside and vacate the order of the hearing member of December 7, 1950, and prayed that his claim be set down for a new hearing for the consideration of additional evidence. On February 5, 1951, the appellee filed its affirmative answer admitting that the appellant was industrially blind, and consenting to an award to the appellant from the said "second injury fund." Such petition contained the following words:

"In answer to said petition and in order that the Industrial Board of Indiana may be advised, the defendant The Pierce Governor Company avers that the plaintiff herein had been in the employ of the defendant for a long period of time. That he was an excellent employee, and that his work was entirely satisfactory in all things, although the plaintiff had been blind in his right eye since birth.

"Defendant further answers that since the accident on May 12th, 1949, by virtue of which the plaintiff became industrially blind in his left eye, he has been unable to do any work whatever because of his lack of vision. That management of the defendant in its effort to assist the plaintiff caused a survey of its plant to be made in an effort to find a job which the plaintiff could do, despite his impaired vision, but that after weeks of surveillance by management of the defendant, such management concluded, and now believes, that the plaintiff is industrially blind and unable to do and perform any work.

"The defendant further avers that because of the character of the plaintiff and his excellent record with the defendant, the defendant believes that the plaintiff is entitled to and should have compensation from the SECOND INJURY FUND, as provided by the law of the State of Indiana, and the defendant, in view of the circumstances as established by this answer, hereby consents that the plaintiff have an award at the hands of the Industrial Board of Indiana, payable from the SECOND INJURY FUND."

Thereafter, on April 7, 1951 the Full Industrial Board denied appellant's petition to set aside and vacate the order of the Industrial Board made on the 7th day of December, 1950.

This case presents an unusual situation in that the appellee-employer has taken no further steps in the present case following the filing of its informative answer in response to appellant's petition to set aside the order of the Industrial Board. In such answer, the employer admitted the extent of the injury alleged, and the right of the appellant to compensation under the "second injury fund" and filed its consent that the plaintiff have an award at the hands of the Industrial, Board payable from the "second injury fund."

Therefore, there was no actual adversary party to this appeal, and a brief was tendered by the Attorney General, amicus curiae, without the consent of this court, but without objection on the part of the appellant, asserting on behalf of the Industrial Board that its order should be sustained, and asserted that appellant herein was not denied due process of law in the proceeding set forth in the record.

It is clear that the Industrial Board, in the instant case, possessed the power and authority to set aside its

order denying compensation. It is well settled that the Industrial Board of this State has the power on the application of any interested party to vacate its own order on application, seasonably and diligently made, where it appears that any such order is a result of fraud, duress, mistake, or gross irregularity affecting substantial rights. *Aetna Life Ins. Co.* v. *Shiveley* (1920), 75 Ind. App. 620, 632, 121 N. E. 50; *Builders, etc., Casualty Co.* v. *Evans* (1928), 88 Ind. App. 170, 175, 161 N. E. 529.

The issues presented to this court in this appeal present the questions whether the Full Industrial Board, which had the power to vacate its order, abused its discretionary powers in denying appellant's petition to set aside its order; and whether the record discloses circumstances amounting to constructive fraud which prevented appellant from presenting his side of the case; or whether there were such gross irregularities affecting substantial rights that would compel the board to set aside its order denying compensation in order not to deny appellant due process of law.

The Industrial Board denied appellant's petition to set aside and vacate its previous order denying compensation from the "second injury fund." Since the board heard no evidence on such verified petition to set aside its order, the facts stated in such petition must be taken as true for the purpose of this appeal. *Haas* v. *Schrum* (1919), 72 Ind. App. 381, 124 N. E. 761.

The following facts appear in such petition: That the appellant was represented in his claim for compensation by an attorney who was also superintendent of claims for the insurers of the defendant employer, and that such attorney was in fact representing both sides,

and although he acted in good faith and did not consciously do anything improper, he was serving two masters. The appellant contends this irregularity affected his substantial rights, and that he should have a new hearing on his claim for compensation from the "second injury fund."

After the petition for second injury compensation was filed, the matter was not set for hearing, but instead, the board examined the petition with the reports of the doctors which had been attached, and entered an order directing the appellant to be examined by the doctor appointed by the board. The board's doctor submitted an unsworn report which is set out in this opinion. Prior to the consideration of such report by the board, the board did not provide for any notice to the appellant or his attorney, or fix a time or place where such board would hear such testimony so as to provide a reasonable opportunity for cross-examination. This is clearly an irregularity constituting error unless it appears from the record that the appellant has waived his rights with respect thereto. *Boyer* v. *Overhead Door Corp.* (1940), 107 Ind. App. 679, 26 N. E. 2d 572.

In view of the fact that the attorney representing the appellant was also in the employ of the insurance carrier as their claim representative, he was in the position of representing both sides, and as such, he was, under the law, the agent of neither. *Ayres* v. *Smith* (1948), 227 Ind. 82, 84 N. E. 2d 185; *Logan* v. *Logan* (1933), 97 Ind. App. 209, 180 N. E. 32; *Bowman* v. *Bowman* (1899), 153 Ind. 498, 55 N. E. 422; *Wilson* v. *State* (1861), 16 Ind. 392; *Price* v. *Grand Rapids & Ind. R. R. Co.* (1862), 18 Ind. 137; *Hunter* v. *Harrell* (1928), 88 Ind. App. 68, 163 N. E. 295.

Therefore, it cannot be said that the appellant has waived his right to insist upon the proper presentation of such doctor's testimony, and an opportunity for cross-examination of such doctor, because of the failure of the attorney, who stood in the position of representing both sides, to insist upon such right.

The right to cross-examine witnesses under oath is not a rule of procedure or evidence. It is fundamental to due process, and cannot, unless waived, be denied by any trier of facts, any court, or administrative tribunal. *Henry* v. *State* (1925), 196 Ind. 14, 146 N. E. 822; *Alford* v. *U. S.* (1931), 282 U. S. 687, 75 L. Ed. 624, 51 S. Ct. 218; 58 American Jurisprudence, witnesses, § 611, p. 340.

Under the circumstances shown by this record in this case where the adversary party, the employer, appears and concedes that the appellant is entitled to compensation out of the "second injury fund," and that he is industrially blind; and where the report of the employer's physician, Dr. E. O. Alvis, supports such informative answer, filed by the employer, it clearly appears that the appellant should have had the opportunity of cross-examination of Dr. Flick, and an opportunity to refute such testimony at a hearing upon proper notice. The fact that since his attorney was also acting for both the appellant and the adversary party, even though in good faith, a situation is created where appellant, by reason of the irregularities, pointed out herein, has been deprived of substantial rights and has been prevented from fully presenting his side of the controversy. A case of constructive fraud and irregularity affecting the substantial rights of the appellant which constituted a denial of due process is shown by the record in this case. The full board, in the interest of justice, should

have not summarily denied appellant's petition to vacate its order denying compensation, but on the contrary, on the facts shown, it was the duty of the board to have vacated its order of December 7, 1950, and to have heard evidence on appellant's petition for compensation out of the "second injury fund."

The order and judgment of the Industrial Board denying appellant's petition to vacate its order denying compensation is hereby reversed, and this cause is remanded for proceedings not inconsistent herewith.

NOTE.—Reported in 101 N. E. 2d 199.