STEELE *v.* ANDERSON COMPANY

[No. 18,798.    Filed April 25, 1956.]

446

*Hulbert & Marlatt, William I. Marlatt,* of Gary, for appellant.

*Albert H. Gavit* and *Gavit, Eichhorn & Draper* (of counsel) of Gary, for appellee.

PFAFF, P. J.—The appellant claims to have suffered an accidental injury on the 11th day of June, 1954, while employed by the appellee, and as a result thereof she says that she became permanently and totally disabled.

Her application for compensation was denied by the Industrial Board upon the following finding of facts: That on the 11th day of June, 1954, the plaintiff was in the employ of the defendant at an average weekly wage in excess of $50; that on said date the plaintiff did not sustain personal injuries by reason of an accident arising out of and in the course of her employment with the defendant; it is further found that the plaintiff suffered a lumbar laminectomy and the excision of a ruptured lumbar intervertebral disc arising out of the lumbar disc of the fourth and fifth vertebrae, but that such condition was not caused, aggravated or accelerated by an accident arising out of and in the course of her employment with the defendant.

The sole error relied upon for reversal is that the award is contrary to law. This being a negative finding against the appellant who had the burden of proof, the only question to be decided is whether the evidence entitled her to relief, which was denied her by the award. *Wilson, Admrx.* v. *Rollings* (1938), 214 Ind. 155, 14 N. E. 2d 905. In order to decide this question it is necessary to examine the record. The evidence upon which appellant relies is as follows: That on June 11, 1954, she was in the employ of the appellee and on that date she was working on her job packing windshield wiper blade arms into individual boxes and then packed six of the small boxes into a carton. As she was doing this the carton turned over and was going to upset. In the act of grabbing for it she felt a terrific pain and a catch in her back. The pain continued; however, she worked the remainder of the day, which was on a Friday, but never reported the incident to her employer. On the following Monday she reported to the appellee's nurse, who made an appointment with the company doctor for that afternoon. The

appellant testified that the doctor told her that it was just a strain and that she would be all right in a few days; that shortly thereafter the appellant left on her vacation, driving to California where she spent considerable time. During her stay in California she had five physical therapy treatments on her back. Upon her return to Gary she reported to work but was informed by the company nurse that she would have to report to the company doctor. Upon physical examination she was informed that she would be all right and that she could work. On July 20, she again reported for work but was informed by the nurse that an appointment had been made for her to see an osteopath, who later treated her; that thereafter she was sent to a nerve specialist who, on the 10th day of August, 1954, performed a myelogram which revealed a ruptured disc, and on the 30th day of November an operation was performed. Appellant further testified that between the time of the accident, which was on June 11, and the time of the operation, her condition was definitely getting worse; that she was never in bed until she had the myelogram, and after the operation she was confined in her bed until February 26, 1955; that she had not been able to work since this operation and is not now able to work. The record further discloses that prior to June 11, 1954, she had never felt any pain in the area of the right hip; that she had worked for the Anderson Company for approximately twelve years and never at any time was away from her work on account of an accident or injury or other complaints.

The appellant's testimony was corroborated, as to physical pain suffered by her on the day of the alleged accident, by the testimony of a fellow employee. She was also corroborated in other portions of her testimony by her husband, who was a witness in her behalf. The

appellant insists that the above evidence is undisputed and entitled her to the relief sought as a matter of law. However, the record discloses that during a physical examination conducted by Dr. Richard G. Nilges, on the 24th day of July, 1954, she gave the following past history: "That she had a similar severe attack in the right lower lumbar area with pain two years ago; that the pain started in the same way and that she had received six chiropractic treatments with relief." The record also discloses that a witness for the appellee testified, in substance, as follows: "She complained of a sore back a year prior to this occasion (June 11, 1954) and throughout that year prior she had complained several times of a sore back."

The appellant says that the only medical testimony was that of Dr. Richard G. Nilges, who testified that on the basis of appellant's history there could be a causal connection between her condition as he found it and the incident at her work; and that assuming her history was correct the accident on June 11, 1954, could have either caused or aggravated the condition which was found at surgery, namely, a ruptured intervertebral disc. Some of the questions propounded to him and his answers are as follows:

Q. Doctor, do these ruptured intervertebral discs, such as Mrs. Steele had, ever result from accidental means?

A. Yes, sir, they usually do.

Q. Doctor, in your opinion, is it possible that the strain of lifting display boxes of windshield wiper blades which weighed approximately ten (10) pounds and, that is, for a woman lifting such boxes that weighed ten pounds and turning sideways and placing those boxes into a larger box at a slightly lower level from the table from which she picked them up, so that as she puts these smaller boxes into the

larger boxes she twists her back and she stoops over, is it possible for such a movement to cause enough strain upon her body as to in turn cause a ruptured intervertebral disc such as you found Mrs. Steele had?

A. Such a motion of the body could cause or aggravate a ruptured intervertebral disc such as Mrs. Steele had.

Q. Do you have any history of a traumatic history, have you?

A. We have a history as given by the patient of a twisting strain to her back that could cause her condition.

Q. Now when you have one of these latent disc conditions most anything will create the true final hernia that requires surgery, won't it? By way of illustration, getting up and down on a chair, coughing, sneezing, bending over to dress or undress; any of those things would be the spark that sets off the final condition, may it not?

A. Not in my experience; it requires some sort of twisting, straining injury of greater or less severity to the back.

Q. Doctor, assuming there was no latent disc condition and that a woman had successfully been doing a certain type of work for as long as two (2) years and on the particular date that falls in question in a judicial proceeding just doing what she had been doing day after day a hernia disc developed, what in that particular day's work is it would tie that condition in with the woman's work?

A. It is always possible that the back can be placed in such a position or a strain to be placed on the back that at various times of the day a strain could occur at any time and apparently according to the woman's history did occur on the 11th day of June.

Q. Well, what according to her history was unusual in the form of strain, what was it that she suffered?

A. She states and I quote, "She was bending over to pick up some windshield wiper frames and

upon straightening up felt a catching in the right lower part of her back," and if I may continue, I have had numerous patients of the same history, bending over and placing an object, and I have known the accident or incident to occur at any time, heavy or light.

Q. And similarly it can occur, Doctor, from as simple a thing as bending over to lace your shoe if you have a latent condition?

A. It could, but not usually. In my experience it usually is associated with picking up something.

It must be conceded that there is ample evidence in the record to support an affirmative award based on the appellant's theory of liability had the Industrial Board seen fit so to do. We further recognize that where an accidental injury, arising out of and in the course of the employment, aggravates, accelerates or activates a pre-existing condition of or injury to an employee, the right is compensable. *Heflin* v. *Red Front Cash and Carry Stores, Inc.* (1947), 225 Ind. 517, 75 N. E. 2d 662; *Earhart* v. *Cyclone Fence Company* (1934), 99 Ind. App. 48, 190 N. E. 558; *Brooks* v. *International Furniture Company* (1951), 122 Ind. App. 300, 101 N. E. 2d 197, Transfer Denied (1952).

Such a situation, however, does not justify this court in reversing the present unfavorable award unless the controlling facts are such that reasonable men are forced to a conclusion contrary to that reached by the Industrial Board. *Warren* v. *Indiana Telephone Company* (1940), 217 Ind. 93, 26 N. E. 2d 399; *Wright* v. *Peabody Coal Company* (1948), 225 Ind. 679, 77 N. E. 2d 116; *James* v. *Zimmerman Coal Company* (1938), 105 Ind. App. 28, 13 N. E. 2d 315. Considering all the facts, as we have detailed them above and the legitimate

inferences therefrom, it seems to us that reasonable men might have well questioned the fact that the appellant had an accident on the 11th day of June, 1954. The negative circumstances we have related, to quote the language used in *Wright* v. *Peabody Coal Company, supra,* "might well have been considered in determining the weight to be given to the appellant's testimony even to the point of rejecting it as to the item of injury. Of course the trier of the facts cannot arbitrarily reject items of oral evidence but, even though a particular item of evidence is not expressly or directly contradicted, this does not prevent the trier from taking into consideration all of the other evidence including circumstances and surroundings that might in any way affect the weight or credibility of such evidence, and the trier may disregard oral evidence if considered unreasonable or inconsistent with facts and circumstances shown by other evidence in the case." Through the application of these principles to the facts in the present case the award of the Industrial Board can be justified and therefore it is not contrary to law.

The award of the Board cannot be set aside in this case unless all the evidence is undisputed and not contradicted and leads inescapably to the sole conclusion that the appellant was entitled to an award under our Workmen's Compensation Act. *Krenz* v. *Ferguson Coal Company* (1926), 85 Ind. App. 347, 154 N. E. 35; *Heflin* v. *Red Front Cash and Carry Stores, Inc., supra.* It is the law of this state that a *prima facie* case must always prevail in the absence of countervailing proof or in other words where the evidence in the record is all one way its effect becomes a matter of law even in favor of the plaintiff to recover. *First National Bank et al.* v. *Farmers and Merchants National Bank et al.* (1908), 171 Ind 323, 86 N. E. 417;

*City of Decatur* v. *Eady, Executrix* (1917), 186 Ind. 205, 115 N. E. 577; See also *Dockerty* v. *Hutson* (1890), 125 Ind. 102, 25 N. E. 144; *Carver et al.* v. *Carver* (1884), 97 Ind. 497; *Riley et al.* v. *Boyer et al.* (1881), 76 Ind. 152. But the facts in this case which would warrant a recovery on the part of the appellant were not established without controversy or opposing testimony. Appellant's evidence as to injury was disputed by opposing testimony. Also there was evidence from which the Board could have determined that appellant had given different histories of her injury and different symptoms of the same. These variations and contradictions might well have been considered in determining the weight to be given to appellant's testimony even to the point of rejecting it as to the item of injury. Of course, the trier of facts cannot arbitrarily reject items of oral evidence but, even though a particular item of evidence is not expressly or directly contradicted, this does not prevent the trier from taking into consideration all of the other evidence including circumstances and surroundings that might in any way affect the weight or credibility of such evidence, and the trier may disregard oral evidence if considered unreasonable or inconsistent with facts and circumstances shown by the other evidence in the case. *McKee* v. *Mutual Life Insurance Company of New York* (1943), 222 Ind. 10, 51 N. E. 2d 474; *Wm. P. Jungclaus Company* v. *Ratti et al.* (1918), 67 Ind. App. 84, 118 N. E. 966.

It must be borne in mind that the finding of the Board in this case is a negative finding and it cannot be attacked upon the ground that there is a lack of evidence to support it, as a decision against the party having the burden of proof does not rest

upon the quantum of evidence. *Wilson, Admrx.* v. *Rollings, supra.*

During its review of the hearing member's finding and award, the Full Industrial Board denied a petition by the appellant to introduce additional evidence. This was a matter within its sound discretion and, unless abused, its exercise thereof is not subject to review. *Blessinger* v. *Olinger* (1933), 97 Ind. App. 636, 187 N. E. 684; *Flinn* v. *Hartley* (1933), 96 Ind. App. 320, 184 N. E. 915. An examination of the appellant's petition indicates that the additional testimony she sought to introduce was cumulative and corroborative in nature and we see no abuse of discretion in its refusal.

Award affirmed.

Royse, C. J.—Not participating.

NOTE.—Reported in 133 N. E. 2d 896.