## Noble County Highway Department v. Kathleen Sorgenfrei, Jerry Sorgenfrei and Dennis Sorgenfrei.

[No. 2-174A34. Filed January 23, 1975. Rehearing denied March 5, 1975. Transfer denied September 29, 1975.]

---

82

*Michael V. Gooch, Harrison, Moberly & Gaston,* of Indianapolis, for appellant.

*Edgar A. Crimm, Grimm & Grimm,* of Auburn, for appellees.

SULLIVAN, P.J.—We review an Industrial Board award of death benefits to appellee Kathleen Sorgenfrei for the death of her husband, Max. The issue before us is whether the death was a result of the industrial accident in the light of a pre-existing leukemic condition.

The facts are essentially undisputed: Max Sorgenfrei was

employed by the Noble County Highway Department as a laborer. He had been in apparent good health, as was evidenced by the fact that between 1945 and the accident on May 14, 1969, he had visited the doctor only once, for gall bladder surgery in 1965. He made a full recovery from that operation, and did not miss a day of work due to illness until May 14, 1969.

On that day, Max was crushed between two highway department trucks. He suffered fractured vertebrae and pelvis, and severe internal injuries. Following that accident, Max was hospitalized for two months. He was then released and treated on an outpatient basis, but was never able to resume his normal activities. During that hospitalization unusual bone marrow and blood cell findings were made, but diagnosis was inconclusive. Max continued outpatient care until January 28, 1970, at which time he was readmitted for examination of his blood condition. On January 29, a test of his bone marrow revealed "myeloproliferative disease with questionable transformation to myelogenous leukemia." He was released on February 3, 1970, but contracted pneumonia and was readmitted February 6. He died in the hospital February 12, 1970.

The key paragraph in the findings of the Full Industrial Board is as follows:

"That thereafter, on the 12th day of February, 1970, plaintiff's decedent Max E. Sorgenfrei died as the result of the combined effects of his industrial injuries and a myeloproliferative blood disease which manifested itself and became symptomatic subsequent to the involvement of Max E. Sorgenfrei in the industrial accident of May 14, 1969; that prior to May 14, 1969, and the occurrence of said industrial accident, the said Max E. Sorgenfrei, plaintiff's decedent, had evidenced no symptoms of ill health and had lost no work because of illness for several years; that following receipt of his industrial injuries in said referenced industrial accident on May 14, 1969, plaintiff's decedent never regained his health and strength and was never able to return to gainful employment prior to the time of his death on February 12, 1970; that Max E. Sorgenfrei's industrial injuries aggravated and exacerbated his pre-existing

but latent and asymptomatic blood disease and hastened the death of Max E. Sorgenfrei."

The only question before us is whether the findings, or such portion thereof as are sufficient to support the award, are in turn supported by the evidence of record.

As was stated by our Supreme Court in *Heflin* v. *Red Front Cash & Carry Stores, Inc.* (1947), 225 Ind. 517, 521-522, 75 N.E.2d 662:

> "Indiana long ago adopted the majority rule, that where an employee afflicted with disease receives a personal injury under such circumstances that he might have obtained compensation under a Workmen's Compensation Act on account of the injury had there been no disease involved, but the disease is materially aggravated or accelerated by the injury, resulting in disability or death earlier than would otherwise have occurred, and the disability or death does not result from the disease alone progressing naturally as it would have done under ordinary conditions, but the injury, aggravating and accelerating its progress, materially contributes to hasten its culmination in disability or death, there may be an award under the Workmen's Compensation Act. *In re Bowers* (1917), 65 Ind. App. 128, 133, 134, 116 N.E. 842, and authorities there cited; *Indian Creek Coal, etc., Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N.E. 519, 120 N.E. 709; *Puritan Bed Spring Co.* v. *Wolfe* (1918), 68 Ind. App. 330, 120 N.E. 417; *Krenz* v. *Ferguson Coal Company* (1926), 85 Ind. App. 347, 154 N.E. 35; *State* v. *Gageby* (1933), 95 Ind. App. 681, 184 N.E. 190; *The Studebaker Corp.* v. *Jones* (1937), 104 Ind. App. 270, 10 N.E. (2d) 747." See also, *Tonn and Blank, Inc.* v. *Curtis* (1967), 141 Ind. App. 115, 226 N.E.2d 551 (malignant tumor aggravated by trauma); *Blackfoot Coal & Land Corp.* v. *Cooper* (1950), 121 Ind. App. 313, 95 N.E.2d 639 (cancer aggravated by strain).

Under circumstances such as before us, another, perhaps more appropriate method of determining the causal connection between the industrial accident and the death is whether the trauma and the pre-existing illness *combined* to hasten the death. As stated by the Appellate Court in *Victor Oolitic Stone Co.* v. *Crider* (1939), 106 Ind. App. 461, 19 N.E.2d 478, 480:

"We think that the evidence is sufficient to sustain the conclusion of the board that there was a causal connection between the head injury on the 7th day of December, 1937, and the death of the employee which followed on February 8, 1938. In order to be compensable, such injury, where there is such causal connection, need not be the sole cause of the death but need only to be a contributing or concurring cause. *See Miami Coal Co.* v. *Luce*, 76 Ind. App. 245, 131 N.E. 824; *Indiana Power & Water Company* v. *Miller*, 73 Ind. App. 521, 127 N.E. 837; *Bucyrus Company* v. *Townsend et al.*, 65 Ind. App. 687, 117 N.E. 656; *National Rolling Mill Company et al.* v. *Kish*, 80 Ind. App. 331, 139 N.E. 454." *See also, Eureka Chevrolet Co.* v. *Franklin* (1956), 126 Ind. App. 435, 131 N.E.2d 330.

Whether the situation is viewed as one of "combination" or "aggravation", the ultimate test is simply whether the death occurred as a proximate result of the industrial injury. Small, *Workman's Compensation Law of Indiana*, §§ 5.4, 6.2-6.3, 6.20. There is adequate medical evidence to support the conclusion that under either theory, Max's death was a proximate result of injuries sustained when he was crushed between the two trucks.

The testimony of the medical witnesses supporting the findings of the Board may be summarized as follows: Max suffered latent, asymptomatic leukemia at the time of the accident; no one could accurately forecast the lifespan of someone in that condition but it could be as long as 15-20 years, with remissions. Dr. Edwards further testified: "I think that the underlying blood disease and the injury combined to hasten this man's demise. . . . [T]here were obviously two serious ailments in this gentleman. One, his blood disease and the other, this trauma. And, anytime you have two serious ailments in one individual, they combine together to the detriment of the individual. And, in this case, it seems to me that his injury probably accelerated the symptoms of the leukemia, which eventually became evident. This is really what you can say is that there is an accumulative effect between the two. . . . The entire course of leukemia was accelerated and exacerbated by the accident and the subsequent necessary

surgery . . . [W]e can make a relatively good combination causal assumption because he never regained his good health following his accident."

It is true that the Highway Department's medical witness testified differently. However, as stated by the court in *Tonn and Blank, supra,* 141 Ind. App. at 118-119:

"The only conflict we find in the evidence in the record is the medical testimony as to whether or not the injury received by the decedent aggravated the pre-existing malignant tumor and thereby ultimately resulted in the decedent's death. Under such circumstances, it was for the Industrial Board to determine what weight and credit should be given to the opinions expressed by the physicians testifying in this cause. "See *General Accident, Fire & Life Assurance Corp. Limited, et al.* v. *Waldon* (1950), 121 Ind. App. 1, 5, 94 N.E.2d 487.

In the case of *Drompp, et al.* v. *East, et al.* (1961), 134 Ind. App. 110, 178 N.E.2d 217, at page 222, we also find the following statement:

'While there was some variance between the medical testimony, the fact there is some contradiction does not clothe us with the function of becoming the trier of the facts. The evidence given by each of the witnesses was of probative value and the weight of the evidence is for the determination of the Board as was the perogative to believe or disbelieve the statements of the witnesses. *Welton* v. *State Highway Commission* (1960), 131 Ind. App. 291, 170 N.E.2d 450.' The mere fact that such medical testimony is conflicting, or that perhaps the greater weight of such evidence is against the finding and award, does not justify a reversal of the Board by this Court. If the contrary were true, it would amount to this Court weighing the evidential facts, which we have consistently held we cannot do. *Wilson* v. *Betz Corp. et al., Supra.*

In the case of *Hess* v. *Ohlen Bishop Co.* (1932), 96 Ind. App. 142, 183 N.E. 487, we find the following pertinent statement:

'Although the finding in the case may appear to be manifestly against the weight of the evidence, the law of this state precludes this Court from setting aside said finding where there is any competent evidence to support the same.' "

We find that the evidence supports the findings of the Industrial Board and accordingly we affirm the award.

Buchanan and White, JJ., concur.