LOUISE GOODMAN *v.* OLIN MATHEISON CHEMICAL CORPORATION, OLIN, INC. AND TRAVELERS INSURANCE

[No. 2-1074A244. Filed October 4, 1977. Rehearing denied October 8, 1977.]

*David V. Scott, Kelso & Scott*, of New Albany, for appellant.

*James E. Bourne, Orbison, O'Connor, MacGregor & Mattox*, of New Albany, for appellees.

WHITE, J.— The Industrial Board of Indiana has certified to us additional findings of fact which we requested in a previously unpublished Memorandum Decision which we now publish as an introduction to this opinion. Omitting caption and mandate, our Memorandum Decision reads:

"Mrs. Goodman was awarded 150 weeks compensation 'as and for permanent partial impairment of 30 percent of the body as a whole'. She contends she was entitled to 500 weeks for total permanent disability. Also, that the Industrial Board abused its discretion in ordering her examined by a doctor of defendant's choice who she contends was not disinterested. Because the Board's specific findings are insufficient to enable us to decide the first issue we shall hold the appeal in abeyance

pending further findings which the Board is ordered to certify to us on or before December 1, 1976.

"The Board's findings relevant to the issue of whether Mrs. Goodman's condition is one of permanent partial impairment or of total permanent disability are:

" 'It is further found that on September 18, 1968, plaintiff was an employee of the defendant Olin, working on its assembly line lifting powder kegs or bags. She also filed a hopper with powder, as well as tying the "tails" at the bottom of the powder bags.

" 'That in the course of and while doing the aforementioned described job duties she bent down but couldn't come back up.

\* \* \*

" 'That on January 17, 1972, the plaintiff is wearing the second brace she has had, waits on herself, cooks a little, but still is unable to work.

" 'That Dr. McCullough estimated plaintiff had reached a permanent and quiescent state long ago and that she now has fifteen percent estimated impairment.

\* \* \*

" 'That it was stipulated at the hearing on the merits of the cause before the Single Hearing Member that plaintiff was an employee of defendant Olin on September 18, 1968, at an average weekly wage in excess of the maximum of $85; that she was injured on said date in an accident arising out of and in the course of her employment and she has been paid temporary total disability compensation for 126 weeks.

" 'It is further found that defendants have paid at least a portion of the statutory medical expenses.

" 'It is further found that plaintiff's injury has reached a permanent and quiescent state and she has sustained permanent partial impairment of 30 percent of the body as a whole as the result of said accident and injury.'

"The specific finding that she 'still is unable to work' would have sustained the conclusion that she was totally disabled had the Board so concluded. The fact that the Board concluded, instead, that 'she has sustained permanent partial impairment of

30 percent of the body as a whole as a result of said accident and injury' suggests that the Board *may have* concluded that although she is totally disabled and that her condition is 'permanent and quiescent', only thirty percent of her disability is 'the result of said accident and injury', while the remaining seventy percent is the result of her pre-existing condition.

"Though not conceding that appellant is totally and permanently disabled the appellee-employer does concede that there was evidence from which the Board could have concluded that her disability is permanent and total and that she was suffering no impairment prior to her stipulated injury at work. At the same time, appellee contends the evidence most favorable to it supports the Board's award which it claims we are required for that reason to affirm. More specifically appellee says:

"'Although the Full Board did not expressly find the degree of plaintiff's pre-existing impairment, as the plaintiff might argue it should have done, it is implicit in the award that any impairment which plaintiff has above 30% to her whole body pre-existed her injury ... and that the sum of her pre-existing impairment and the aggravation suffered in that injury amounts to less than permanent and total disability.'

"For her part, appellant concedes that '[t]here were many pre-existing conditions which play a role in the total permanent disability ... [she] suffers from today', but argues to the effect that the evidence proves that she was not suffering from any impairment or disability prior to the injury. She believes that what the Board has done is to attribute the origin of her present total disability partly (70%) to her pre-existing condition and partly (30%) to her injury. If that be so, and if appellant had no pre-existing impairment or disability, but is now totally disabled, it would appear that the award is contrary to law. *Indianapolis Abattoir Co. v. Coleman* (1917), 65 Ind. App. 369, 117 N.E. 502; *Puritan Bed Spring Co. v. Wolfe* (1918), 68 Ind. App. 330, 333, 120 N.E. 417; *Bethlehem Steel Corporation v. Cummings* (1974), 160 Ind. App. 160, 310 N.E.2d 565. In *Bethlehem* the court said:

"'Our prior decisions make it clear that the concern of this statute [Ind. Ann. Stat. §22-3-3-12 (Burns Code Ed., 1974), a "subsequent permanent injury statute"] lies in those instances where a claimant at the time of the complained of

incident is already suffering an impairment or disability in the affected members. Where he merely has a physical condition which renders him more susceptible to being injured, he is entitled to recover for the full extent of the injury received. . . .' 310 N.E.2d at 567."

The newly certified findings and award read, in pertinent part, as follows:

"It is found that on September 18, 1968, the Plaintiff was in the employ of the Defendant performing the normal duties to which she had been assigned and on that date, by fact and by stipulation of the parties, said Plaintiff had an accident arising out of and in the course of her employment for said Defendant.

"It is further found that the Defendant-Employer had actual notice of said accident, and provided certain statutory medical treatment to the Plaintiff by sending Plaintiff to the hospital for the treatment of any injuries which she may have received as a result of the aforesaid accident at her employment.

"It is further found that the Plaintiff received an injury from said accident on September 18, 1968, and said injury was in the nature of a sprain or strain to the lumbar region of her low back.

"It is also found that prior to said accident of September 18, 1968, the Plaintiff had several pre-existing conditions in her back and said pre-existing conditions consisted of kyphosis, spondylosis or osteoarthritis and lardosis, all which contributed to a weakened and degenerating condition in Plaintiff's back and the anatomical structures related to the Plaintiff's back.

"It is further found that Plaintiff suffered a period of temporary total disability for 126 weeks during which time she was paid the sum of $51.00 per week, based upon an average weekly wage in excess of the statutorily allowable maximum of $85.00. Said Plaintiff's condition has now reached a permanent and quiescent state, insofar as the injury of September 18, 1968 is concerned.

"It is further found that the injury, resulting from the accident of September 18, 1968, has now reached a permanent and quiescent state and, as to those injuries only, the Plaintiff has a permanent partial impairment to her bodily function of 30% of the woman as a whole.

"It is further found that the Plaintiff is totally disabled, at the present time, from pursuing any gainful employment and that her total disability at this time is not due to the accidental injury of September 18, 1968, but rather comes from conditions that pre-existed said accidental injury, and were totally unrelated to said accidental injury, excepting insofar as said accident may have aggravated said pre-existing condition and may have lead, in part, to her present total disability from following any gainful employment.

"It is further found that Plaintiff did have pre-existing impairment to her body, but that such pre-existing impairment did not prevent her from working at the time of her accident.

"At the present time, the Plaintiff is totally impaired and unable to seek gainful employment. Of the total impairment, which the Plaintiff presently has, 30% thereof is permanent and was caused by the accidental injury of September 18, 1968; the remaining 70% of her impairment is related to causes and conditions pre-existing the accident of September 18, 1868, and is therefore unrelated to her employment. It is further found that the medical evidence in this record is inconclusive, as to whether or not the Plaintiff's total impairment will be permanent, but that 30% of said impairment is permanent and is directly related to her employment.

## "AWARD

"IT IS, THEREFORE, CONSIDERED, ORDERED AND AD-JUDGED by the Full Industrial Board of Indiana, pursuant to the remand of the Court of Appeals, that the Plaintiff be awarded compensation, as against the Defendant, at the rate of $51.00 per week for a specific period of 150 weeks for a permanent partial impairment rating of 30% due to an accidental injury arising out of and in the course of the Plaintiff's employment with the Defendant which accident occurred on September 18, 1968.

"It is further ordered that the Defendant be given credit for all compensation paid in excess of 26 weeks at $51.00 per week.

"It is further ordered that if the Plaintiff's condition, based upon her 30% permanent partial impairment and the pre-existing physical conditions and impairment result in medically established 100% permanent impairment, the remaining 70% permanent impairment, if established by credible evidence, shall be paid to the Plaintiff upon application to the Second Injury Fund."

These findings confirm our previously expressed apprehension that the award is contrary to law. It is now clear that the Board has apportioned Mrs. Goodman's total impairment or total disability between her accident and her pre-existing condition. Such an apportionment has no Indiana precedent and is not authorized by any provision in the Indiana Workmen's Compensation Act.

"Apart from special statute, apportionable 'disability' does not include a prior nondisabling defect or disease that contributes to the end result. Nothing is better established in compensation law than the rule that, when industrial injury precipitates disability from a latent prior condition, such as heart disease, cancer, back weakness and the like, the entire disability is compensable, and, except in states having special statutes on aggravation of disease[1] no attempt is made to weigh the relative contribution of the accident and the pre-existing condition to the final disability or death. Apportionment does not apply in such cases, nor in any case in which the prior condition was not a disability [Indiana would say 'impairment'] in the compensation sense." 2 Larson WORKMEN'S COMPENSATION LAW § 59.20, p. 10-270.

Indiana does have an apportionment statute, Ind. Ann. Stat. § 22-3-3-12 (Burns Code Ed., 1974), also known as "section 33" (of the 1929 Act),[2] but it applies only to "those

---

1. An example of such a special statute is §4663 of California's Labor Code:

"In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

Even that statute is interpreted as authorizing apportionment " 'only in those cases in which part of the disability would have resulted, in the absence of the industrial injury, from the "normal progress" ' of the pre-existing disease." *Amico v. Workmen's Compensation Appeals Board* (1974), 43 C.A. 3d 592, 118 Cal. Rptr. 831, 835. "[W]hen a subsequent injury lights up or aggravates a previously existing condition resulting in disability, liability for the full disability without proration is imposed on the employer. . . ." *Id.*

2. "If an employee has sustained a permanent injury either in another employment, or from other cause or causes than the employment, or from other cause or causes than the employment in which he received a subsequent permanent injury by accident, such as specified in section 31 [22-3-3-10], he shall be entitled to compensation for the subsequent permanent injury in the same amount as if the previous injury had not occurred: Provided, however, That if the permanent injury for which compensation is claimed, results only in the aggravation or increase of a previously sustained permanent injury or physical condition,

instances where a claimant at the time of the complained of incident [i.e., his or her industrial accident] is already suffering an impairment or disability in the affected members." *Bethlehem Steel Corporation v. Cummings* (1974), 160 Ind. App. 160, 310 N.E.2d 565, 567. In other words, it applies to those instances in which an employee has a pre-existing impairment which combines with the impairment resulting from his subsequent compensable accidental injury to render him either permanently totally disabled or permanently partially impaired in a greater degree than would have resulted from the subsequent injury had there been no pre-existing impairment.[3] This, of course, is something quite different from the exacerbation or aggravation of a pre-existing, but non-impairing and non-disabling condition of the body. As both the

regardless of the source or cause of such previously sustained injury or physical condition, the board shall determine the extent of the previously sustained permanent injury or physical condition, as well as the extent of the aggravation or increase resulting from the subsequent permanent injury, and shall award compensation only for the part of such injury, or physical condition resulting from the subsequent permanent injury. Provided further, however, That amputation of any part of the body or loss of any or all of the vision of one or both eyes shall be considered as a permanent injury or physical condition."

3.  California also has a statute which makes the same provision as Indiana's §33 but in much clearer language. California's statute reads:

"§4750. Extent of employer's liability; compensation for later injury alone

"An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment.

"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed.

"(Stats. 1937, c. 90, p. 285, §4750. Amended by Stats. 1945, c. 1161, p. 2209, §1.)"

A typical example of successive impairments to which Indiana's section 33 or this California statute would apply is found in *Armes v. Pierce Governor Co.* (1951), 121 Ind. App. 566, 101 N.E.2d 199, a second injury fund case under section 33a (IC 1971, § 22-3-3-13) in which both the employer and the employee claimed the employee was congenitally blind in one eye and was blinded in the other by an industrial accident. The employer paid compensation only for the loss of one eye (175 weeks). If the claimed facts had been proved the employee would have been entitled to an additional 325 weeks from the second injury found (§33a of the Act, IC 1971, §22-3-3-13) to give him the 500 weeks to which he would have been entitled by the provisions of IC 1971, §22-3-3-10(a)(2) being §31 of the 1929 Act, as amended.

1968 and 1976 supplements to Small's WORKMEN'S COMPEN-
SATION LAW OF INDIANA point out:

> "The procedures of Section 33 . . . [Ind. Ann. Stat. §22-3-3-12
> (Burns Code Ed., 1974)] should not be confused with those of
> the ordinary case of employment aggravation of a pre-existing
> disease or weakness . . . . While it is not too clear in its scope,
> Section 33 . . . has always related to successive permanent in-
> juries of the type scheduled in Section 31 . . . [Ind. Ann. Stat.
> §22-3-3-10 (Burns Code Ed., 1974)]. Before 1945, this was ap-
> parent on the face of the statute itself. Then, in 1945, the pre-
> sent proviso concerning apportionment was added, and with
> the 1945 amendment came the new words 'physical condition'
> in addition to the old 'permanent injury', so that it might seem
> that the proviso would apply to any case of aggravation of pre-
> existing condition. However, the case precedents, as well as
> the legislative history, do not warrant such a conclusion. The
> cases decided under Section 33 . . . have always been ones in-
> volving successive harms of the type set out in the schedules of
> Section 31 . . . [Ind. Ann. Stat. §22-3-3-10 (Burns Code Ed.,
> 1974)], while the cases dealing with the other types of aggrava-
> tion of pre-existing condition have involved unscheduled
> harms — hernia, cardiovascular weakness, infection, etc. — not
> permanent injuries." Small, *supra*, 1968 Supp. at 73, 1976 Supp.
> at 92.

While the Board has made a finding that Mrs. Goodman "did
have pre-existing impairment to her body", it made no finding
that she was seventy percent impaired before her accident which,
in view of its finding that she is now totally impaired, it would have
had to do to justify awarding her compensation for only thirty per-
cent impairment under the provisions of §33, as above interpreted.
*Moore v. Staton* (1950), 120 Ind. App. 339, 341, 92 N.E. 2d 564, 565.
That case was remanded to the Board with directions to make pro-
per findings and enter an award based thereon. Here, however,
there is no evidence to support a finding that Mrs. Goodman was
impaired to any appreciable degree prior to her accident nor is
there any reason to believe that it would be possible to adduce
evidence at a future hearing on which any medical expert could
base a reasonable estimate of the degree of pre-existing impair-
ment, if any.

As a matter of fact it is highly doubtful that there is any credible evidence of probative value in the record to sustain the Board's finding "that Plaintiff did have pre-existing impairment to her body". The testimony of Mrs. Goodman and her neighbor, the only lay witnesses, negates the existence of any facts which would support such an inference. The only support for the finding is in the testimony of the employer's two medical witnesses.

Dr. James Y. McCullough, the employer's first witness, testified on direct examination: "Well, I would think that she was suffering from some physical impairment from the osteoarthritis, but I would not know to what degree for she was holding down a job and so as to whether she was properly fitted for this job, physically able to do it, is a question with me but I feel that a person with this much arthritis is--certainly does have some physical impairment to whatever they may be doing of a physical nature."

On cross-examination, he testified:

"A.   Well, I think she has some arthritic disability. I think she has always had some arthritic impairment, but the change brought about between being able to work and being permanently disabled, I have a difficult time of seeing anything that is permanent here except arthritis.

"Q.   Doctor, in what way from a medical standpoint or from any standpoint, in what why was her arthritis impairing her prior to this accident?

"A.   Only she could tell you that."

Pressed further for the basis of his opinion that she had always had some arthritic impairment he finally answered that "She was a bad arthritic before the accident."

"Q.   Well Doctor, tell me, based upon reasonable medical probability, and based upon facts, wherein she was a bad arthritic before this accident? Did it impair her in any way?

"A.   I do not know."

Upon further cross-examination he stated he did not know whether he or any other physician or surgeon would have found any impairment upon examination of Mrs. Goodman before the accident.

The defendant's other medical expert, Dr. David A. Gard, was asked on cross-examination a series of long and apparently hypothetical questions, the essence of which was whether Mrs. Goodman, if she did not know before the accident that she had arthritis and if she had no pain from it, was in any way "disabled" by it. His involved and initially affirmative answers concluded with: "I can't say a person who has arthritis is not at least to some degree disabled. They are able to function, but there is a disability present." On further questioning, however, he answered that when people who had been sent to him "for evaluation for work came up with x-ray findings of underlying arthritis" he would give them a "qualified return to work by reason of the fact they have arthritis of the back" and "[t]hey are not good employees", but their underlying arthritis is not disabling yet is a potential problem because it can be aggravated into disabling reality.

The Board's finding of prior impairment, standing alone, or read in light of the evidence most favorable to it, furnishes no basis for apportioning Mrs. Goodman's total disability or total impairment between her accident and her pre-existing arthritis. And viewed from the standpoint of Indiana Workmen's Compensation decisional law, the same is true of Dr. McCullough's and Dr. Gard's conclusions as to causality. Medically, it may well be that if Mrs. Goodman had not had the arthritis and other back conditions the doctors found, she would have made an early and complete recovery from the accidental back strain or sprain she suffered at work on September 18, 1968. Or, had she been free of her back conditions, it may well be that she would never had been disabled by her accident. But it is denied by no one that the accident did disable her and that, as the Board has found, she is still totally disabled. The employer takes his employees as he finds them, if he takes them at all, and if they sustain injuries by accident arising out of and in the course of their employment they are entitled to compensation for their own

injuries, not for the injuries physically and mentally perfect employees would have sustained in like accidents. *Heflin v. Red Front Cash & Carry Stores, Inc.* (1947), 225 Ind. 517, 521, 75 N.E.2d 662, 664; *Rankin v. Industrial Contractors* (1969), 144 Ind. App. 394, 401, 246 N.E.2d 410, 414; *Noble County Highway Department v. Sorgenfrei* (1975), 163 Ind. App. 81, 321 N.E.2d 766, 768.

The award is set aside and the cause is remanded to the Industrial Board of Indiana for further proceedings not inconsistent with the views expressed herein.

Lowdermilk, J., participating by designation, concurs.

Buchanan, J., dissents with opinion.

## DISSENT

BUCHANAN, J.—I respectfully dissent because the majority have ignored the words "previously sustained permanent injury or *physical condition*" in the apportionment statute (IC 22-3-3-12) and by setting aside the Board's decision have in effect reweighed the evidence.[1]

Prior to 1945 what is now the apportionment statute provided that the sum total of the prior condition and the increase or aggravation thereof by a subsequent injury was compensable. *See* ch. 172, § 33, [1929] Ind. Acts 536, 548. Then in 1945 the statute was amended extensively to provide that compensation should be allowed only for that part of a permanent injury attributable to the present injury if the permanent injury claimed is the result of an "aggravation or increase of a previously sustained permanent injury or physical condition, regardless of the source or cause of

---

1.  The cases are legion in Indiana in both this and the Supreme Court that on appeal we will not determine the credibility of witnesses nor weigh the evidence heard by the Board to determine for whom it preponderates and we will not disturb its findings unless the evidence is undisputed and leads inescapably to a contrary result. *See, e.g., Motor Freight Corp. v. Jarvis* (1975), 163 Ind. App. 442, 324 N.E.2d 500; *Bohn Aluminum & Brass Co. v. Kinney* (1974), 161 Ind. App. 128, 314 N.E.2d 780.

Were it otherwise, the mandate of IC 22-3-4-8 which states that "[a]n award by the full board shall be conclusive and binding as to all questions of the fact" would be a nullity.

such previously sustained injury or physical condition." IND.
CODE § 22-3-3-12.

The purpose of this broad language requiring apportionment if
the claimed injury results in aggravation or increase of a
previously sustained "physical condition" was in the words of the
court in *Kinzie v. General Tire & Rubber Co.* (1956), 235 Ind. 592,
600, 134 N.E.2d 212, 216, "to remove one of the major barriers
against the employment of the physically handicapped persons by
dealing more fairly with the employer of such persons." The court
went on to say:

> Neither is there any good reason why an employer should be
> required to pay compensation for an injury to an already af-
> flicted member of the employee's body, unless such injury
> results in an aggravation or increase of impairment within the
> standard of impairment fixed by the act. *Id.* at 600-01, 134
> N.E.2d at 216.

So in order to encourage employers to hire handicapped per-
sons the apportionment statute came into being in 1945 and the
courts then recognized the right of the Board to apportion be-
tween the pre-existing "physical condition" and the subsequent
compensable injury. *See Kinzie v. General Tire & Rubber Co.,*
*supra; Moore v. Staton* (1950), 120 Ind. App. 339, 92 N.E.2d 564.

The Board found that Goodman had "several pre-existing condi-
tions in her back and said pre-existing conditions consisted of . . .,"
and further that she "has a permanent partial impairment to her
bodily function of 30% of the woman as a whole."

There was evidence to support the finding that Mrs. Goodman
had a pre-existing impairment. Dr. James Y. McCullough testified
"that she was suffering from some physical impairment from the
osteo-arthritis . . . ," "she has some arthritic disability," and "she
was a bad arthritic before the accident." The other medical
testimony came from Dr. David A. Gard who, among other things,
testified that, "I can't say a person who has arthritis is not at
least to some degree disabled."

The mere fact that the medical testimony is not reduced to
mathematical certainty is no basis for this court weighing the

evidence. The Board is knowledgeable in these matters and must in the nature of things determine ratios or proportions in accordance with their accumulated knowledge and expertise.

The Board, not this court, should make such determinations. In doing so the Board must apply the apportionment statute if there is a previously existing *physical condition* which has been aggravated. The employer does not take such handicapped persons as he finds them, a fact which the Board reconized in this case and properly applied the apportionment statute rendering a decision with proper findings and evidence to support its findings.

To conclude otherwise is to drain the very essence out of the apportionment statute. And, in my opinion, the cases of this court, *see, e.g., Bethlehem Steel Corp. v. Cummings* (1974), 160 Ind. App. 160, 310 N.E.2d 565; *Bendix Products Div. v. Kolberg* (1961), 133 Ind. App. 405, 172 N.E.2d 589; *Steele v. Anderson Co.* (1956), 126 Ind. App. 445, 133 N.E.2d 896; *Magazine v. Shull* (1945), 116 Ind. App. 79, 60 N.E.2d 611, and Professor Small's treatment of this statute, *see* B. SMALL, WORKMEN'S COMPENSATION LAW OF INDIANA § 9.9 (1976 Cum. Supp., J. Rader), are contrary to the last Supreme Court word on the subject, to-wit, *Kinzie v. General Tire & Rubber Co., supra.* The distortion of the statute has been by this court.

The Board's decision should be affirmed.

NOTE—Reported at 36 N.E.2d 1140.