HARBISON-WALKER REFRACTORIES COMPANY *v.*
TURKS ET AL.

[No. 16,914. Filed March 4, 1942.]

*McAleer, Dorsey, Travis & Young,* of Hammond, for appellant.

*Gavit & Richardson,* of Gary, for appellees.

FLANAGAN, J.—This is an appeal from an award made by the full Industrial Board of Indiana in favor of appellees, as dependents of Tallis Turks, under the Indiana Workmen's Occupational Diseases Act of 1937. The cause of death was found to be the "result of an occupational disease known as tuberculosis pneumonia, associated with silicosis, contracted by said Tallis Turks while in the course of his employment" with the appellant.

Appellant contends that there is no evidence that the decedent was exposed to the hazards of the disease of silicosis while in its employ. While appellant concedes that the evidence shows the presence of silica where the decedent worked, it insists that there is no evidence that the quantity was present necessary to cause silicosis according to the standard of the United States Department of Labor, to wit: ten million

particles of dust per cubic feet, eighty-five per cent silica of the fineness of ten microns in size over a forty-hour period per week for a period of five years.

There is no requirement that such proof be made. The evidence is ample that silica was present where decedent worked and was there continuously breathed by him over a period of more than ten years in sufficient quantity to cause silicosis and result in his death.

It is next contended that the report of an autopsy performed by Dr. A. S. Giordano was erroneously admitted into evidence.

Tallis Turks died August 3, 1939. On that day, at the Hinton Funeral Home in East Chicago, Indiana, Dr. A. C. Webb, pathologist of Provident Hospital, Chicago, made a post-mortem examination of the body, removed both lungs, took them with him and retained possession of them until he returned them to the Hinton Funeral Home on October 23, 1940, when the autopsy was performed by Dr. Giordano. The rest of the body was shipped a few days after death to the State of Alabama where it was interred.

No notice of the post-mortem examination of August 3rd was given to appellant; and for that reason, evidence as to the result of the examination was excluded when this cause was first heard by a single member on September 10, 1940.

Thereafter, while the cause was pending before the full Industrial Board on petition for review, appellees obtained an order from the Industrial Board for an autopsy to be performed on October 23, 1940, at the Hinton Funeral Home by Dr. A. S. Giordano, pathologist selected by the Industrial Board, of which appellant had due notice. At the time and place set, Dr.

Webb produced the lungs and Dr. Giordano performed the autopsy.

Appellant contends that the entire body had to be produced in order for an autopsy to be performed in compliance with the statute.

The Workmen's Occupational Diseases Act is a practical statute, having for its purpose the accomplishment of a definite humane purpose. It should ▮ be mantled in the spirit of the objective, not shrouded in a haze of over-technical interpretations.

Section 12(a) of § 40-2212, Burns' 1940 Replacement, which provides for the performance of autopsies, reads as follows:

"Sec. 12(a). Any dependent, the employer or the industrial board, shall have the right in any case of death to require an autopsy at the expense of the party requiring the same. The board shall order such autopsy, and shall designate a competent pathologist to perform the same, and shall give the parties in interest such reasonable notice of the time and place thereof as will afford a reasonable opportunity to witness such autopsy in person or by a representative. It shall be the duty of such pathologist to perform such autopsy as, in his best judgment, is required to ascertain the cause of death. Such pathologist shall make a complete written report of all his findings to the industrial board, including laboratory results described as such, if any. The report of the pathologist shall contain his findings on such post-mortem examination and the report shall not contain any conclusion of the pathologist based upon the findings so reported. The report shall be placed on file with the industrial board, and shall be a public record. The report, or a certified copy thereof, may be introduced by either party on any hearing as evidence of the findings therein stated, but shall not be conclusive evidence of such findings, and either party may rebut any part thereof.

"(b) No autopsy shall be held in any case, by any person, without notice first being given to the parties in interest, if they reside in this state or their whereabouts can reasonably be ascertained, of the time and place thereof and reasonable time and opportunity given such parties in interest to have a representative or representatives present to witness the same. If such notice. is not given, all evidence obtained by such autopsy shall be suppressed on motion duly made to the industrial board."

The purpose of this section is to provide a method of making available evidence to be obtained from a post-mortem examination of the body, under the supervision of the board and in a manner fair to all concerned, in order to arrive at the truth as to the cause of death.

We see nothing in the language used or in the objective to require an examination of more of the body than is needed to discover the cause of death. In this case, part of the body was interred many miles away in the State of Alabama. It is not contended by anybody that any of that part of the body which lay in rest in Alabama could add any light in the search for the cause of death. All that was needed for the work of the pathologist was in his possession. What reason can be assigned for placing upon the statute such a limited interpretation as to require either the useless taking of the body from its distant grave and shipping it back to Indiana or denying the searchers for the truth the evidence at hand?

The statute provides: "It shall be the duty of such pathologist to perform such autopsy as in his best judgment is required to ascertain the cause of death." The pathologist would of course dissect only those parts of the body which would assist him. If all parts that might assist were not present, he would report such fact;

and there would be no evidence on the cause of death, or it would make clear the limitations on its value.

We find no error in the admission of the report of the autopsy.

Award affirmed.

NOTE.—Reported in 39 N. E. (2d) 791.