MID-CONTINENT PETROLEUM CORPORATION *v.* VICARS ET AL.

[No. 27,864. Filed April 21, 1943.]

388

*Cooper, Royse, Gambill & Crawford,* of Terre Haute, and *Barnes, Hickam, Pantzer & Boyd,* of Indianapolis, for appellant.

*John K. Fesler, Bert F. Wood,* and *Frank Hamilton,* all of Terre Haute, for appellees.

FANSLER, J.—The appellee Vicars was awarded compensation by the Industrial Board of Indiana for an injury sustained while he claimed to be an employee of the appellant. Two members of the five-member board dissented. The case was appealed to the Appellate Court, where the award was affirmed with a written opinion. *Mid-Continent Petroleum Corporation* v. *Vicars et al.* (1943), 46 N. E. (2d) 253. The appellant has petitioned to transfer to this court, and, following the practice sanctioned in *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. (2d) 399, asserts that the Appellate Court's opinion does not fully disclose appellant's contentions, and has taken steps which bring the entire record before us.

Appellant is engaged in the business of marketing petroleum products. It was the lessor of certain real estate in the City of Terre Haute, upon which was located a building suitable for gasoline filling station purposes, and it owned the filling station, machinery, and equipment located on these premises. On September 4, 1940, the appellant entered into a lease contract with the appellee Goodman, by the terms of which it subleased to him the filling station, premises, and equipment for a period of six months, with provision for renewal for like periods until either party gave written notice of intention to terminate ten days prior to the

expiration of the current six-month period. The lessee was granted the right to terminate the lease at any time upon ten days' written notice. The lessor was granted the right to terminate upon ten days' written notice "in the event any requirement of either the Local, State or Federal Government, or any agent thereof, hereafter made shall materially affect the rights of the Lessor in the leased premises in respect of additional taxes." The lessee agreed to pay $10 per month cash rental in advance and a sum equal to three-quarters of a cent per gallon on the amount of motor fuel and/or gasoline sold at the station, and in addition thereto the sum of $5 per day for each day lessee failed to operate a service station on the premises.

On the same date the parties entered into what is termed a "Dealer's Contract" or a "Contract of Sale," by the terms of which the appellant agreed to sell and deliver to the appellee Goodman "Purchaser's requirements of D-X Ethyl Motor Fuel, D-X Motor Fuel and Power Gasoline at said place of business" (the premises covered by the lease). The contract was for a term of six months, with provision for renewal for like periods in the absence of ten days' written notice to terminate at the expiration of any six-month period. It is provided: "Nothing in this contract shall be construed to abridge the Purchaser's right to conduct and carry on the business of selling at retail motor fuel and gasoline and it is understood and agreed that the Purchaser is and shall be wholly free and independent of any domination or control by the Seller; and nothing herein is intended or shall be construed to give the Seller any domination or control over the Purchaser's said business, except for the purposes and to the extent provided by the express terms hereof."

On the same date a third contract, known as a

"Quantity Discount Agreement," was entered into between the parties. By this contract the appellant agreed to sell to the appellee Goodman "Purchaser's requirements of Diamond 760, Faultless and Power Automotive Oils and Diamond and Faultless Greases at said place of business." This agreement was for six months, with provision for renewals as in the other contracts. Certain discounts are provided upon an increasing gallonage basis, beginning at 3 cents per gallon and increasing to 9 cents per gallon.

There is no evidence of any other or different agreements between the parties.

These three contracts are separate and distinct and not interdependent. There is nothing in any of the contracts granting to appellant any right or power to command or dictate concerning the manner in which the filling station was to be operated by Goodman, or to command or require that he operate the property as a filling station. He had the right to conduct some other business by paying $5 per day, or $150 per month, in addition to the $10 per month cash rental, in lieu of three-quarters of a cent per gallon for the gasoline sold. There is no provision requiring him to employ help, and no suggestion that the appellant might have any voice in the choice of employees, if he should employ assistants, or the manner in which work was to be done in operating the premises as a filling station.

While these three contracts were in effect, Goodman employed Vicars to work for him at the station. He worked there one week. Goodman testified: "He came in and I really didn't need him but he said he needed work and I paid him two dollars a day for helping." It seems that prior to that time Goodman had operated the station without assistants. It appears that, in addition to petroleum products, Goodman sold tires, bat-

teries, automobile accessories, cigarettes, candy, and soft drinks on the premises. There was evidence that a Mr. Shideler, a salesman for the appellant, visited the station about once a month, and made suggestions concerning the sale of merchandise and the conduct of the business generally. There was a sign on the station bearing the letters "D. X.," which was the appellant's trade name for its products, and both Goodman and Vicars wore uniforms with the letters "D. X." on the front and back. These uniforms were of the same character as those worn by the appellant's truck drivers, but they were procured by Goodman from a third party dealing in such clothing and paid for by him, and there is nothing in the contracts requiring the display of the sign or the wearing of the uniforms, and there is no evidence that the appellant sought to or did require it. Vicars testified that all he knew of his employment was that he went to work for Goodman, and was not employed by the Mid-Continent Petroleum Corporation. Mr. Shideler, on his one visit to the station while Vicars was there employed, made a suggestion to Vicars concerning the manner of greasing a car, and Goodman said that Mr. Shideler told Vicars, "service—that is what we want here." Mr. Shideler said that his interest was in promoting the sale of appellant's products through the station.

The appellant issued credit cards to certain of its customers, and authorized Goodman to extend credit to the holders of these cards, and agreed that it would accept receipts for merchandise to such persons as cash. Goodman testified that it was the same as cash to him. There is no evidence that Goodman agreed to extend credit, or to limit the extension of credit, to holders of these cards, or to refrain from extending credit to other persons upon his own responsibility.

After Vicars had been employed about a week he came into the station, where Goodman was using gasoline to clean the floor. Gasoline fumes were ignited from a coal stove causing an explosion. Vicars sustained third-degree burns to both legs, and the front of the building was blown out by the explosion.

At the time Goodman took possession of the filling station under the lease he purchased the stock of merchandise then on hand from the former lessee. At an undisclosed date after the accident, Goodman notified the appellant that he wanted to give up the station. The appellant found a purchaser, and Goodman sold his merchandise and interest in the station, and the contracts between the parties were canceled.

The rights and obligations arising under the Workmen's Compensation Act (Acts 1929, ch. 172, p. 536, Burns' 1933, § 40-1201 et seq., Baldwin's 1934, § 16377 et seq.) are contractual in character. *Warren* v. *Indiana Telephone Co., supra.* One seeking recovery under the act must bring himself within its terms. Recovery of compensation depends upon the existence of the relation of employer and employee. Section 73 of the act defines the term "employer" as one "using the services of another for pay." The relationship of employer and employee always arises out of a contract, express or implied. *In Re Moore* (1933), 97 Ind. App. 492, 187 N. E. 219. There is no evidence that the appellant was using the services of Vicars for pay, or that there was any contract of employment between them. *Bennett* v. *Baldwin* (1940), 108 Ind. App. 158, 27 N. E. (2d) 396, and cases cited.

The Appellate Court in its opinion was largely influenced by the language used in *Midwestern Petroleum Corporation* v. *State Board of Tax Com'rs et al.* (1934), 206 Ind. 688, 187 N. E. 882, 191 N. E. 153. That case

involved the liability of the appellant for a chain-store tax. It was said in the opinion that, under a lease and contract similar to those here involved, the filling stations in question were under the control of the appellant within the meaning of the tax law involved. The act in question (Acts 1929, ch. 207, p. 693, § 42-301 et seq., Burns' 1933, § 16011 et seq. Baldwin's 1934), provides that: "Every person, firm, corporation, association or copartnership opening, establishing, operating or maintaining one or more stores or mercantile establishments, within this state, under the same general management, supervision or ownership, shall pay the license fees hereinafter prescribed for the privilege of opening, establishing, operating or maintaining such stores or mercantile establishments." Section 5. The term "store" is defined as " . . . any store or stores or any mercantile establishment or establishments which are owned, operated, maintained or controlled by the same person, firm, corporation, copartnership or association . . . ." Section 8. There is a further provision that: "The provisions of this act shall be construed to apply to every person, firm, corporation, copartnership or association, either domestic or foreign, which is controlled or held with others by majority stock ownership or ultimately controlled or directed by one management or association of ultimate management." Section 7. The act was construed as a police measure, the object of which was to prevent or discourage monopolies in the marketing of goods, wares, and merchandise. Its terms clearly indicate that it was designed to have a much broader application than merely to those stores under direct ownership and operation by agent or servant. The case was cited with approval in *Gulf Refining Co.* v. *Fox* (1935), 11 F. Supp. 425, 431, in which the court said: "We are

not called upon to decide the question of tort liability under the agreements in this case, for it is in no way involved, and it does not necessarily follow that the plaintiff is liable for the torts of the dealers merely because it has such a control over the stations as to subject it to the chain store tax." The Federal Court recognized that there could be control of the station within the meaning of the tax law, even though the operator of the station and his employees were not the agents or servants of the leasing company.

The case of *Ferris* v. *American Brewing Co.* (1900), 155 Ind. 539, 58 N. E. 701, involved a lease which was made upon condition that no beer should be sold upon the premises except that manufactured by a specified brewer. If there had been a number of such leases, a tendency toward monopoly of the beer market by the brewery would have been created, and hence a condition which the tax law was designed to discourage. Control of the premises would exist to the extent that a partial monopoly of the market for beer was created, and, still, upon no recognized principle of law could it be said that the relationship of master and servant or principal and agent existed between the brewery and the tenant of the premises and his employees. Liability to pay compensation under the Workmen's Compensation Act, *supra*, depends not upon a control or domination that might tend to create a monopoly, but upon the existence of the relation of employer and employee for pay.

In *Marion Shoe Co.* v. *Eppley* (1914), 181 Ind. 219, 224, 104 N. E. 65, 66, in determining whether the person whose act caused the injury was an independent contractor or a servant, the court said: "The real test is, Was appellee, at the time he sustained his injury, under the power and control of

appellant and subject to its orders and directions in the doing of the work at hand?" The court held that he was not. The appellant had contracted for the construction of a factory building on its property for its own use. The appellant was to furnish all material for the building, and the contractor was to furnish the tools used by the workmen and to employ its own men. There could be no question that the construction of the building was under the control of the appellant; that it was built for its purposes; and that it might change the plans or abandon the work at any time before completion. To this extent it clearly had the entire "control" of the project, but the question decided by the court was a narrower one, that is, whether the appellant had the right or power to command the particular act which caused the injury and the manner in which it should be performed. If so, it was the principal, and the person doing the act was its agent or employee. If not, the person doing the act was the agent or employee of the contractor, and the relation of master and servant did not exist. "Control" is used here in an entirely different sense than in the tax case. The "control" involved under the tax law is control of the output of merchandise that tends to monopolize. The "control" involved in determining whether the relationship between principal and agent or master and servant is involved must be accompanied by the *power* or *right* to order or direct. No question of master and servant or principal and agent was involved in the tax case.

Four cases are cited as sustaining the views of the Appellate Court. The first is *Eason Oil Co. et al.* v. *Runyan et al.* (1932), 158 Okla. 241, 13 P. (2d) 118. In this case the district agent of the oil company testified at the trial that the distributor was just a manager

or agent for the company. In the later case of *Magnolia Petroleum Co.* v. *Jones et al.* (1938), 184 Okla. 103, 85 P. (2d) 274, the case was distinguished by the same court in a case where the situation was similar. In the latter case the court said that the contract between the parties was in writing and clear and unambiguous; that it created the relationship of landlord and tenant; and that there was no showing that the contract was a mere subterfuge, or that the parties were operating under any other or different agreement. The same is true in the case at bar. The appellee Goodman testified that he operated the station under the terms of the contract. He owned the merchandise at the station and sold it when he gave up his lease. *Gulf Refining Co.* v. *Rogers et al.*, Tex. Civ. App. 1933, 57 S. W. (2d) 183, is cited. In the later case of *Texas Company* v. *Wheat et al.* (1943), 140 Tex. 468, 475, 168 S. W. (2d) 632, 636, this case was distinguished by the Supreme Court of Texas, which said that in the former case, " . . . the company not only reserved the right to control the details by which the station was to be operated, but actually assumed and exercised such control not only as to the manner in which the work was to be performed, but as to who should be employed to do the work." It may be added that the facts in the earlier case were not comparable to the facts in the case at bar. In *Joiner* v. *Sinclair Refining Co.* (1934), 48 Ga. App. 365, 172 S. E. 754, the operator of the station sued the Sinclair Refining Co. for damages caused by an explosion. The company defended upon the ground that he was an employee, and his remedy was a claim for compensation, and the court so held. There was no lease involved. In *Greene et ux.* v. *Spinning et al.*, Mo. App. 1932, 48 S. W. (2d) 51, 57, it is said in the opinion that one of the contracts

between the parties "specifically provides that this filling station should be operated by Spinning 'in a manner satisfactory to and at the will of the first party.' "

In some of the cases involving leases the court seems to have given consideration to the length of the lease in determining whether or not the relationship was that of landlord and tenant or master and servant, apparently upon the theory that if the lease might be terminated in a short interval it resulted in a different relationship than that of landlord and tenant. The lease here involved was for a term of six months, but we cannot see how, on principal, the length of the lease could affect the relationship of the parties. The parties had a right to make a contract fixing their own status. It clearly and unequivocally creates the relationship of landlord and tenant. Goodman testified that he operated the station under the lease contract. There is no evidence to the contrary.

The judgment of the Appellate Court is reversed, with instructions to enter an order directing the Industrial Board to find for the Mid-Continent Petroleum Corporation.

NOTE.—Reported in 47 N. E. (2d) 972.