THOMAS L. SLINKARD v. EXTRUDED ALLOYS.

[No. 771A130. Filed December 28, 1971.]

---

480

*Larry K. Wallace*, of Indianapolis, for appellant.

*Frank I. Magers, Howard J. DeTrude, Jr., John T. Lorenz, Kightlinger Young Gray & Hudson*, of Indianapolis, for appellee.

BUCHANAN, J. — *STATEMENT OF THE CASE AND FACTS*—Review is sought from a decision of the full Industrial Board of Indiana (the Board) reversing plaintiff-appellant Thomas L. Slinkard's (Slinkard) disability compensation award allowed by a Hearing Examiner for an injury allegedly arising out of and in the course of his employment with defendant-appellee Extruded Alloys (Extruded).

Slinkard was employed by Extruded as a punch press operator on the night shift. On or about February 8, 1968, Slinkard was operating a press, punching pieces of aluminum about 2 inches wide, 36 inches long, and weighing about 8 ounces apiece. After the metal pieces were pressed, they were placed in boxes nearby. Slinkard stated that it was necessary for him to frequently move these boxes, weighing about 100 to 150 pounds apiece, during the course of his work; and that he had moved about 10 of these boxes on the evening in question.

At some time during the night of February 8, 1968, Slinkard claims to have incurred a back injury. As to the specific cause of his injury, Slinkard stated in his deposition:

Q. "O.K. Now, go ahead and tell me about the incident.
A. Well, I just started having sharp pains in my back. I can't recall just what time, but it just started hurting that night. At one particular time, I was having trouble getting between the box and the wall. The machine was setting so close to the wall there wasn't room for the box and me to both get in there.

Q. So it started while you were at work. Is that right?
A. Yes.

Q. Now, you can't indicate to me exactly when it started hurting. It that right?
A. No, not the exact time. I probably didn't pay any attention to it too much at first.

Q. Now, you indicated that this started hurting that night. At the time that it started hurting, was there any specific incident which brought it about, sir?
A. No, I just started noticing them, the pains. I don't know, sometimes it wouldn't bother me. I don't think it bothered me too much."

Slinkard then stated that the condition worsened and that he was off part of the month of February.

Slinkard did not introduce medical evidence relating his back injury to his employment. Extruded, however, introduced

a medical report of an examining physician and an x-ray report. The x-ray report showed no evidence of fracture or abnormality. In fact, the vertabral discs appeared to be normally spaced and aligned. Slinkard told his physician that his back no longer hurts while he works, and that it only hurts when he is sick or exhausted.

From February until July, Slinkard wore a back brace and was under the care of a physician. In July of 1968, he was advised by his physician that he could resume light work. Extruded, however, indicated to Slinkard that there was no position open offering only light work. He was then off work until November of 1968, when he was allowed to resume full duties by his physician.

In September of 1968, Slinkard filed a claim for Workmen's Compensation alleging that he suffered a strain of the lower lumbar region of his back during the course of his employment. The Hearing Examiner heard the claim upon a published deposition of Slinkard and stipulation of evidence and entered an award on behalf of Slinkard in the amount of $51.00 per week for temporary total disability for a period of 22 weeks, a period of 10 weeks for 2% permanent partial impairment, and reimbursement for medical expenses.

Subsequently, Extruded filed an application for review by the full Industrial Board. Upon review, The Board reversed the award and found that although Slinkard was in the employment of Extruded on February 8, 1968, he did not sustain an accident or injury arising out of and in the course of his employment, and that any physical problem or complaints suffered by Slinkard were unrelated to his employment.

The Transcript of the Record in this case does not contain any assignment of error. Slinkard does, however, assign error in his brief that the decision of the Board is contrary to law.

Slinkard's brief does not include a verbatim statement of the Board's decision.

*ISSUE*—Whether this appeal must be dismissed due to Slinkard's failure to include an Assignment of Errors in the record of the proceedings before the Board.

*DECISION*—It is our opinion that this appeal must be dismissed for lack of jurisdiction because Slinkard has failed to properly file an Assignment of Errors.

Where judicial review is sought from a decision of the full Industrial Board, the appeal shall be taken "to the Appellate Court for errors of law under the same terms and conditions as govern appeals in ordinary civil actions." IC 22-3-4-8, Ind. Ann. Stat. § 40-1512 (Burns 1965).

Under the Rules of Civil Procedure, as they existed prior to January 1, 1970, (the Old Rules), the typical Assignment of Error was that the trial court erred in overruling the Motion for a New Trial. Since that time Rule TR. 59 has been adopted, which requires a Motion to Correct Errors as a condition precedent to appeal. Prior to January 1, 1970, however, there was no such device as a Motion for a New Trial in a compensation proceeding. The correct procedure was to assign as error that the decision of the Board was contrary to law. This proposition was aptly put by the court in *Cole* v. *Sheehan Construction Co.* (1944), 222 Ind. 274, 53 N. E. 2d 172:

> "There is no such thing as a motion for a new trial in a compensation proceeding, but 'an assignment of errors (in the Appellate Court) that the award of the full board is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the award and the sufficiency of the evidence to sustain the finding of facts.'"

An Assignment of Errors constitutes the appellant's complaint on appeal. To invoke appellate review, a proper Assignment of Error *must be filed,* and in its absence such power of review cannot be properly exercised. *LaReau* v. *Teibel* (1956), 127 Ind. App. 92, 138 N. E. 2d 153.

Rule 2-6 of the Old Rules required an Assignment of Errors to be attached to the front of the transcript immediately following the index, in order to invoke appellate review. This rule has been replaced by Rule AP. 7.2(A)(1), which requires that:

> "The record of the proceedings shall consist of the following documents:
> (1) A certified copy of the motion to correct errors *or an assignment of errors.*" (Emphasis supplied.)

We find no provision in the Indiana Rules of Trial Procedure or in the Indiana Rules of Appellate Procedure, as they now exist, which expressly or impliedly requires the filing of a Motion to Correct Errors before the Industrial Board or which eliminates the necessity of filing in this court a duly certified transcript assigning as error that the decision of the Board is contrary to law. We can only conclude that recent changes in procedure governing "appeals" do not affect the established practice of requiring an Assignment of Errors in the transcript of the proceedings for judicial review of Industrial Board cases. Thus, a filing of a duly certified transcript containing an Assignment of Errors that the decision of the Board is contrary to law with a proper discussion in the appellant's brief is all that is necessary to invoke this court's jurisdiction on review. *Cole* v. *Sheehan Construction Co., supra; Russell* v. *Johnson* (1942), 220 Ind. 649, 46 N. E. 2d 219.

The office of the Assignment of Error in the transcript is to act as a complaint invoking the jurisdiction of this court to review the Board's decision. This prerequisite to judicial review of Industrial Board cases is too firmly established to be negated by permitting an appellant to assign error in his brief only. Moreover, an appellant's brief must also comply with the other requirements of the Rules of Appellate Procedure, particularly Rule AP 8.3, insofar as

the same are applicable to judicial review of this class of cases.

We have carefully examined the record and we find no Assignment of Error in the transcript. Accordingly, this appeal must be dismissed, as we have no jurisdiction to review the Board's decision.

We note in passing that even had Slinkard properly filed an Assignment of Error, the Board's decision would, nevertheless, have been affirmed.

In order for an injury to be compensable, it must arise both "out of" and "in the course of" one's employment. To establish a compensable right, the employee must show more than that he was injured while on duty—more than performance of the usual, routine, every-day task is required. An injury arises "out of" the employment when the employment is in some way responsible for the injury. *E. R. Burget Co.* v. *Zupin* (1948), 118 Ind. App. 644, 82 N. E. 2d 897; *Tom Joyce Seven-Up Co.* v. *Layman* (1942), 112 Ind. App. 369, 44 N. E. 2d 998.

At no time did Slinkard causally connect his injury with some specific accident, lifting incident, or an act resulting from his employment. Consequently, he failed to sustain his burden of proving that the accident arose "out of" the course of this employment.

The appeal is therefore dismissed.

Sullivan, P. J., Lowdermilk and Robertson, JJ., concur.

NOTE.—Reported in 277 N. E. 2d 176.