Pauline W. ROBINSON, Respondent-
Petitioner,

v.

NASHVILLE MACHINE COMPANY, INC.,
and Aetna Life Insurance Company,
Petitioners-Defendants.

Supreme Court of Tennessee.

Dec. 3, 1973.

---

Richard A. Jones, Farris, Warfield & Samuels, Nashville, for respondent-petitioner.

Douglas M. Fisher, Howell & Fisher, Nashville, for petitioners-defendants.

## MEMORANDUM ON PETITION FOR CERTIORARI

DYER, Chief Justice.

In this, a workmen's compensation case, the petitioners, Nashville Machine Company, Inc., and its insurance carrier, Aetna Life Insurance Company, have filed a petition for common law certiorari and supersedeas on the ground there is no other plain, speedy or adequate remedy available. Article 6, § 10, Constitution of Tennessee; T.C.A. § 27–801.

The issue arises upon the refusal of the trial judge to order an autopsy of the deceased employee upon motion of petitioners, pursuant to T.C.A. § 50–1004, on the ground the cause of death was obscure or in dispute. The evidence before the trial judge upon this motion was as follows:

On August 11, 1972, the deceased employee suffered a work related injury, resulting in a hernia, for which surgical repair was done on September 5, 1972. After several days in the hospital the deceased employee was sent home for further recuperation. On September 14, 1972, the deceased employee was returned to the hospital and died in the early morning of September 16, 1972. The death certificate signed by the attending physician, Dr. G. S. Chikkannaiah, stated the cause of death as follows:

Immediate cause (a) cardiac arrest, due to, or as a consequence of: (b) pulmonary embolus vs massive MI (myocardial infarction), due to, or as a consequence of: (c) post traumatic-post herniarrhaphy.

As argued in this Court, the autopsy is necessary to determine if death was caused by a pulmonary embolus in which case death benefits would be due since, under the facts of the case, it could not be plausibly argued the embolus was not related to the surgery, which surgery resulted from a work related injury; or whether death resulted from a myocardial infarction in which case an entirely different fact situation is presented.

Petitioners had no knowledge of the deceased employee's death until September 18, 1972, which was the day of the funeral. On September 25, 1972, a representative of petitioners talked with the deceased employee's widow (the widow is claiming death benefits), informing her it might be necessary to have an autopsy performed in order to clarify the cause of death. On October 9, 1972, representatives of petitioners again called upon the widow and requested she agree that an autopsy be performed. The widow refused, giving as her reason that she had deep religious convictions in regard to disturbing the body of the dead.

On October 31, 1972, petitioners notified the Department of Workmen's Compensation for the State of Tennessee that death benefits in this case were being denied on the ground the cause of death was obscure, which obscurity could be removed by an autopsy and the widow refused to allow an autopsy.

The testimony by letter of Drs. R. Glenn Hammonds and S. G. Chikkannaiah is in the record before us. Dr. Hammonds performed the surgery for the hernia, but upon deceased employee's return to the hospital on September 14, 1972, Dr. Hammonds was not available and Dr. Chikkannaiah received deceased employee as a patient.

Dr. Hammonds stated deceased employee's physical condition prior to surgery was normal with chest clear, heart normal with a regular rythmn. That the post-operative condition was good and deceased employee was allowed to return home to recover from the surgery. Dr. Hammonds with the information he had, including a report from Dr. Chikkannaiah, stated as follows:

> The course of events and the manner in which Mr. Robinson died leads me to believe that he suffered a massive pulmonary embolism subsequent to asymptomatic venous thrombosis in probably the pelvic veins, or at least, the larger veins of the upper thigh. He had no evidence of any swelling of the extremities or evidence of phlebitis according to Dr. Chikkannaiah which leads one to believe that he had soft thrombi which were not blocking the veins but rather loosely attached and that one of these became dislodged and passed through the venacava through the right side of the heart and into the pulmonary artery blocking the pulmonary circulation.

On September 14, 1972, deceased employee was taken to the emergency room and upon developing chest pains was admitted for observation. Dr. Chikkannaiah stated a cardiac workup, cardiograms, chest x-rays and enzyme studies were within all limits. At about 11:00 o'clock, P.M., on September 15, 1972, deceased employee developed severe chest pains and died at 12:40 A.M., on September 16, 1972. It was Dr. Chikkannaiah's opinion the cause of death was a massive pulmonary embolus.

The widow filed her petition for workmen's compensation benefits in February, 1973, and the motion by petitioners to require an autopsy was filed on June 1, 1973.

T.C.A. § 50–1004, pertinent to the issue here, reads as follows:

> In all death claims where the cause of death is obscure or is disputed, any interested party may require an autopsy, the cost of which is to be borne by the party demanding same.

Although the trial judge did not give any specific reason for denying the motion to have the autopsy performed other than to say "upon the basis of the record and the medical proof" it has been argued before this Court great weight was given to the fact the widow because of her deep religious convictions opposed the disinterment of the body of her husband. We will first dispose of this argument.

■■ While the feelings of the widow are certainly understandable, such is not a factor in the decision. In Battle Creek Coal & Coke Company v. Bessie Martin, 155 Tenn. 34, 290 S.W. 18 (1927), the Court noted the workmen's compensation statute is elective and no employee is bound to accept its provisions. Further, the benefits and burdens of the statute arise out of contract and one before the Court claiming the benefits of the Act must necessarily assume its burdens, including in a proper case the right of an employer to have an autopsy where the cause of death is obscure or disputed.

■ In the *Battle Creek Coal & Coke Company* case, Chief Justice Green, writing for the Court, construed the language

of this statute here at issue as being analogous to the provisions for an autopsy in insurance contracts which are uniformly sustained if the demand for such are reasonably and seasonably made, which requires the demand be reasonable both as to time and the occasion for its exercise. The decision here then is whether the demand by the petitioner for an autopsy was as to time and the occasion of its exercise reasonable. The "time" element is determined by a finding the party demanding the autopsy did or did not, after having knowledge of the necessity of an autopsy, wait an unreasonable time before demanding an autopsy. See Town of Newburgh v. Jones, 115 Ind.App. 320, 58 N.E.2d 938 (1945). The "occasion for its exercise" is determined on the presence or absence of other credible evidence, absent an autopsy, upon which the court could determine the issue of cause of death. In such a decision the trial judge is vested with discretion.

■ The request on October 9, 1972, of the widow to consent to an autopsy was, per se, as to the time element clearly reasonable, but in a determination of this issue other facts are to be considered. Lenoir Car Works v. Hill, 163 Tenn. 578, 44 S.W.2d 321 (1931), a case involving a demand for an autopsy in workmen's compensation cases, is pertinent to this issue. The Court in *Lenoir Car Works* noted where the cause of death is obscure or in dispute, the employer has a right to an autopsy which may be enforced by proper proceedings. The Court then notes under our workmen's compensation statutes "either party may submit the entire matter for determination to the Judge." As to the time element the trial judge would consider the time elapsing prior to a motion or other proceedings filed in court demanding an autopsy and the time the party so demanding an autopsy had knowledge of reasonably could have had knowledge such autopsy was needed to determine the cause of death.

Then, upon denying the motion filed June 1, 1973, to order an autopsy, the trial judge had before him the following:

First, on October 9, 1972, petitioners had requested of the widow permission for an autopsy and had been refused. Second, on October 9, 1972, petitioners had knowledge an autopsy was needed to determine the cause of death. Third, that after October 9, 1972, the courts were open to petitioners to have adjudicated its demand for an autopsy. Fourth, that petitioners made no request of any court for an order to have an autopsy until June 1, 1973, some nine months after petitioners had knowledge such was needed. Fifth, there was available the testimony of two doctors who had such knowledge of the facts that they, as expert witnesses, could give an opinion as to the cause of death with which evidence and any other relevant evidence the trial judge could make a determination of the cause of death.

We do not think the trial judge abused his discretion and the petition is denied.

CHATTIN, McCANLESS and FONES, JJ., and LEECH, Special Justice, concur.