DELAWARE MACHINERY & TOOL COMPANY v.
DOROTHY MARIE YATES.

[No. 2-1075A289.  Filed July 13, 1976.]

*Michael V. Gooch, Harrison, Moberly & Gaston,* of Indianapolis, for appellant.

*Wayne J. Lennington,* of Muncie, *Frank E. Spencer,* of Indianapolis, for appellee.

SULLIVAN, J.—Appellant Delaware Machinery & Tool Company (Company) appeals from an award of the Full Industrial Board which granted Workmen's Compensation benefits to Dorothy Marie Yates (Yates) for the death of

her husband, and from an order of the Board which denied Company' request for an autopsy.

The basic facts are undisputed. Yates' husband was injured on November 17, 1967 while in Company's employ. Company paid the medical expenses arising from the accident, including surgery to repair a hernia. This routine surgery was performed on April 27, 1968, ending at about 3:15 P.M. At 6:30 P.M., Mr. Yates was discovered in a state of shock with abnormally low blood pressure. The next morning, April 28, an electrocardiogram was taken which demonstrated he had suffered an acute myocardial infarction. He was transferred to the coronary care unit, where he died at approximately 10:00 A.M. The immediate cause of death stated on the death certificate signed by one of the attending physicians, Dr. Burwell, was acute myocardial infarction. Dr. Nelson, a cardiologist who arrived just after the death requested an autopsy and was refused by Yates. A second request for an autopsy was apparently made by an agent of Company the day before the funeral and this request was also denied by Yates.

Yates filed an application for dependent's benefits with the Industrial Board on May 27, 1969. Company filed a motion requesting exhumation and an autopsy. This motion was denied by both the hearing member and the full Board, and the matter proceeded to a decision on the merits. The hearing member then awarded Yates burial expenses and $51.00 per week for 450 weeks. That award was affirmed by the full board. This Court reversed that award and remanded the case to the Industrial Board because the award was not accompanied by sufficiently specific findings of fact to allow intelligent review. *Delaware Machinery & Tool Co.* v. *Yates* (1973), 158 Ind. App. 167, 301 N.E.2d 857. The Industrial Board has now made adequate factual findings, and entered an award identical to that made earlier.

In its new findings, the Board found that a party requesting an autopsy pursuant to Ind. Ann. Stat. 22-3-3-6 (Burns

Code Ed. 1974)[1] must show that an autopsy is reasonable and necessary, and that Company had brought forward no evidence that its request was either reasonable or necessary. On the merits of Yates' claim, the Board found that the stress of the hernia operation caused the coronary occlusion which resulted in death from myocardial infarction. Dr. Nelson, an associate of Dr. Burwell and also an attending physician, testified that in his opinon death was caused by "ventricular fibrillation which was secondary to an acute myocardial infarction". He further explained that such myocardial infarction is caused by "occlusion or thrombosis of the blood so that it doesn't flow". Thus the immediate cause of death was the cardiac arrest, i.e., infarction brought about by an acclusion so that the blood would not flow to supply the heart muscle. Whether we speak of occlusion or infarction with respect to the sufficiency of evidence issue is not determinative. All we need know is whether the evidence supported a finding that the surgery for the employment-related hernia proximately caused the fatal cardiac arrest.

Company argues that the award was contrary to law because there was insufficient evidence to establish a causal connection between the surgery and the subsequent heart failure. Company also asserts that it properly filed its request for an

---

1. In so far as pertinent, the statutory provision, since amended, reads as follows:

"The employer upon proper application, or the industrial board, shall have the right in any case of death to require an autopsy at the expense of the party requesting same; if, after a hearing, the industrial board orders an autopsy and such autopsy is refused by the widow or next of kin, in such event, any claim for compensation on account of such death shall be suspended and abated during such refusal. No autopsy, except one performed by or on the authority or order of the coroner in the discharge of his duties, shall be held in any case by any person, without notice first being given to the widow or next of kin, if they reside in this state or their whereabouts can reasonably be ascertained, of the time and place thereof, and reasonable time and opportunity given such widow or next of kin to have a representative or representatives present to witness same: Provided, that if such notice is not given, all evidence obtained by such autopsy shall be suppressed on motion duly made to the industrial board."

autopsy and, having done so, had an absolute right to have one performed.

Before reaching the merits of this case, we note Yates' argument that Company has failed to present any error to this Court because Company's assignment of errors reads. ". . . that the *decision and orders* of the Industrial Board are contrary to law," rather than ". . . the *award* is contrary to law." (Emphasis supplied). While it is true that Ind. Ann. Stat. 22-3-4-8 (Burns Code Ed. 1974) provides that:

> "an assignment of errors that the *award* of the full board is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the award and the sufficiency of the evidence to sustain the finding of facts." (Emphasis supplied).

to dismiss an appeal because the word "decision" rather than "award" was used would be to indulge in useless formalism. This court itself has used the terms interchangeably. See, for example, *Slinkard* v. *Extruded Alloys* (1971), 150 Ind. App. 479, 484, 277 N.E.2d 176 at 180, where we said, "Thus, a filing of a duly certified transcript containing an assignment of errors that the *decision* of the Board is contrary to law with a proper discussion in the appellant's brief is all that is necessary to invoke this court's jurisdiction on review." (Emphasis supplied). Company has properly presented its asserted errors to us.

## I

## THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE BOARD'S FINDING THAT THE OPERATION CAUSED THE FATAL HEART ATTACK

Company's argument for reversal of the Board's award is that the conclusion that the decedent's coronary occlusion was caused by the hernia operation was based on evidence without probative value. Company recognizes the long-standing rule that we will not weigh the evi-

dence on appeal, but will consider only the evidence which supports the Board's award, and will reverse an award only if the evidence in the record necessarily leads to the opposite conclusion than the one reached by the Board. *Bohn Aluminum & Brass Plant #9* v. *Kinney* (1974), 161 Ind. App. 128, 314 N.E.2d 780; *Callahan* v. *Lovelace Truck Service* (1973), 158 Ind. App. 164, 301 N.E.2d 801. Company argues however, that the Board's conclusion is mere conjecture because the only evidence which connects the death with the hernia operation is based on an assumed essential fact which has no foundation in the record.

The only medical testimony of record is by way of the depositions of two cardiologists, Dr. Nelson (the associate of Dr. Burwell who performed the hernia surgery) who was called in when decedent's heart problems became apparent (but did not arrive until moments after Mr. Yates died), and Dr. Wolfram, whose testimony was based solely upon the medical records. Their testimony is in substantial agreement except as to the causal relationship between the operation and the occlusion which led to decedent's death.

The factual disagreement here concerns whether the stress of the hernia operation caused the coronary occlusion. Both doctors testified that the stress and strain which accompanies surgery can precipitate an occlusion, but disagreed as to whether this particular operation caused this particular coronary occlusion. Dr. Wolfram throught there was no causal connection because he could see nothing unusual in the surgery, and although as to individuals the effect of strain varies, a simple hernia repair does not usually subject a person to much strain.

Company asserts that Dr. Nelson's contrary opinion was based solely upon a presumption that the decedent suffered from atherosclerosis, a condition involving a restriction of the arteries thus making decedent more susceptible to cardiac failure. The only evidence that he may have suffered from

this condition is testimony that most 64-year old men have atherosclerosis. Company asserts that a statistical inference that this particular decedent had atherosclerosis is improper and has no probative value.

When asked if he thought there was a causal connection between the surgery and the occlusion, Dr. Nelson responded:

"Oh, I think so, yes. I think that - - - it's hard to say. Atherosclerosis is a disease of life and people drop on the streets all the time, but I think it is a stress just like shoveling snow would be.

Q. You feel that the surgery then was a stress which could precipitate an occlusion such as Mr. Yates suffered here?

A. Yes, I think so."

Company seizes upon this testimony as proof that Dr. Nelson relied upon a presumption of atherosclerosis in forming his opinion. This argument ignores, however, Dr. Nelson's later testimony on cross-examination:

Q. "And does the magnitude of stress often affect whether or not a man may have a coronary?

A. Not necessarily, that's what makes it so difficult to decide in this.

Q. Would you say that the integrity of the arteries might have a bearing as to the kind of stress necessary to precipitate a coronary?

A. It might but there are a lot of unanswerable questions in the whole thing.

Q. Would an autopsy in this case have helped an analysis of the causal effects of the operation do you think as presenting the integrity of the artery, how strong the artery was or the occlusion, how large the occlusion was?

A. I really doubt if it would help much."

Moreover, Dr. Nelson testified that a significant percentage of coronary occlusions caused by atherosclerosis occur in the sleep, without any precipitating stress at all. It is clear that Dr. Nelson's opinion concerning causation was based upon the stress of the operation, not a possible pre-existing heart condition. Contrary to Dr. Wolfram's opinion, Dr. Nelson

did not think that there need be anything unusual in the surgery to cause sufficient stress to precipitate a heart attack:

Q. "Let me ask you this question with a little different terminology to see if we might come a little closer to it. Within the realm of reasonable medical certainty, is it your opinion that the operation had a causal connection on the occlusion and subsequent death of Mr. Yates?

A. Yes.

Q. In an operation does there have to be anything unusual in order to create stress?

A. No.

Q. Or anxiety, this type of thing?

A. No.

Q. These would come about normally regardless of whether he had a successful or unsuccessful operation, would that be true?

A. Yes."

Finally, Dr. Nelson testified that his was "an opinion of someone who takes care of people, who sees stress that appears to be a precipitating factor in heart attacks."

Faced with contradictory medical opinions, the Board may choose which to believe just as it chooses to accept and reject lay testimony. We do not become triers of fact just because expert testimony is involved. *Noble County Highway Dept.* v. *Sorgenfrei* (1975), 163 Ind. App. 81, 321 N.E.2d 766; *Combs* v. *National Veneer & Lumber Co.* (1974), 160 Ind. App. 501, 313 N.E.2d 76.

The medical evidence upon which employer relies gives rise to a possible inference that decedent's arterial condition was such that prior to surgery he was susceptible to an occlusion and therefore to myocardial infarction. It further supports an inference that had decedent not undergone surgery, he might have suffered the occlusion and infarction from shovelling snow or for that matter might have died in his sleep. The fact remains, however, that he did undergo surgery; that there was evidence that such surgical strain probably occasioned the particular occlusion which led to decedent's death. That

evidence is enough to establish the causal relationship found by the Board.

There was no error in the Industrial Board's finding that decedent died as a result of the hernia operation.

## II
## THE BOARD DID NOT ERR IN REFUSING COMPANY'S REQUEST FOR EXHUMATION AND AUTOPSY

In the view of the author of this opinion, the Industrial Board correctly stated the law when it said that an employer seeking an autopsy must sustain the burden of proving (1) that a demand for an autopsy was made at a reasonable time and place, and (2) that an autopsy is necessary. *Delaware Machinery and Tool Co.* v. *Yates* (1973), 158 Ind. App. 167, 301 N.E.2d 857; *McDermid* v. *Pearson Co., Inc.* (1939), 107 Ind. App. 96, 21 N.E.2d 80. The Board found that Company had failed to meet its burden as to both facets of the reasonableness and the necessity test.

While the reasonableness of an autopsy request is sometimes considered in the light of time and circumstance, it is not distinct in concept from the "necessity" facet of the test. *See Robinson* v. *Nashville Machine Co., Inc.* (1973 Tenn.), 503 S.W.2d 90. Be that as it may, we need not separately address the "reasonableness" of the autopsy request because the Board was correct in finding that the Company did not sustain its burden of showing the necessity for an autopsy.

Although Indiana cases have established that there is such a requirement, the standard to be followed by the Board in determining whether an employer has demonstrated "necessity" has not been discussed. It was stated in *Harbison-Walker Refractories Co.* v. *Turks* (1942), 110 Ind. App. 563, 39 N.E.2d 791, that the purpose of the autopsy section of the Workmen's Occupational Disease Act was to make evidence from a post-mortem examination available to all concerned under the supervision of the board "in order to arrive at the

truth as to the cause of death." 110 Ind. App. at 567, 39 N.E.2d at 792, but the court did not consider the circumstances under which an employer's request for an autopsy should be granted. Only one criminal case has been revealed dealing with autopsies as a discovery device, but the question of necessity was not really addressed there since an autopsy was clearly unnecessary. *See Taylor* v. *State* (1973), 260 Ind. 264, 295 N.E.2d 600, cert. den. 414 U.S. 1012.

Examination of cases from other jurisdictions, however, indicate that autopsy requests are treated in a different manner than requests for other forms of discovery, particularly where the body has already been interred. In general, requests for autopsies are granted only if there is a strong showing by the party making the request that an autopsy will be likely to establish the disputed fact and that the truth cannot be obtained through other evidence. *See, e.g., Petition of Sheffield Farms Co.* (1956), 22 N.J. 548, 557, 126 A.2d 886 at 891 ("would [in all reasonable probability] disclose the real truth not otherwise determinable") ; *Equitable Life Assurance Society of U. S.* v. *Young & Revel, Inc.* (1969), Del., 250 A.2d 509 at 510 ("reasonably certain that an examination of the body will reveal something bearing on the rights of the parties which could not otherwise be discovered").

One of the cases relied upon by Company in asserting that its request was erroneously denied is *Silver King Coalition Mines Co.* v. *Industrial Commission* (1949), 115 Utah 336, 204 P.2d 811. Under the Utah occupational diseases statute, the Industrial Commission was empowered to order an autopsy where it thought one necessary to "accurately and scientifically ascertain the cause of death". In *Silver King* and its companion case, *Silver King Coalition Mines Co.* v. *Industrial Commission* (1949), 115 Utah 350, 204 P.2d 817, dependents claimed death benefits, alleging that the employees' deaths had been caused by silicosis. In its petition to the Commission requesting autopsies, the Company presented extensive medi-

cal testimony demonstrating that the experts were in disagreement as to the cause of death, with all but one of the physicians who testified agreeing that the only way to be sure whether the decedents had in fact suffered from silicosis was to perform autopsies. The Utah Supreme Court reversed the Commission's refusal to allow an autopsy upon reasoning that the Commission knew of the medical uncertainty but had nevertheless refused discovery which was likely to demonstrate the true cause of death. As the Court said at 115 Utah 351, 204 P.2d 818:

> "Litigants need not and the commission should not rely on evidence less strong than positive knowledge, if the latter type is reasonably obtainable. If there is a strong probability uncertainty can be removed, the right to produce what might be the best evidence should not be conditioned on whether the applicant has testimony to establish a prima facie case. *Rather, it should be based on whether all reasonable persons must conclude that an autopsy would establish with some degree of certainty, doubtful causes of death.*" (Emphasis supplied).

A workmen's compensation case similar to that which is before us, *Robinson* v. *Nashville Machine Co., Inc.* (1973), Tenn., 503 S.W.2d 90, *supra,* held that the necessity of an autopsy request was to be determined by the presence or absence of credible evidence other than an autopsy upon which the trial court could determine the cause of death. (Under the Tennessee statute, in all death claims where the cause of death is obscure or disputed, any interested party may request an autopsy. T.C.A. § 50-1004.) There, the employee died from cardiac arrest 11 days after hernia repair surgery, and there was a dispute as to whether the heart failure was due to pulmonary embolus or myocardial infarction. Resolution of this dispute would determine whether the death was caused by the surgery. Although an autopsy may have settled the question, the Tennessee Supreme Court affirmed the trial court's denial of the autopsy request on two grounds. First, the Court said that the trial court was within its discretion in deciding that the request was not made within a reasonable time.

Furthermore, the Court found that the denial was proper because two doctors had sufficient knowledge of the facts to offer opinions as to whether decedent had suffered a pulmonary embolus or a myocardial infarction and that the trial court could consider those opinions in deciding whether the cause of death was sufficiently obscure or disputed to require an autopsy.

In *Stastny* v. *Tachovsky* (1964), 178 Neb. 109, 132 N.W.2d 317, heirs of the deceased husband and wife requested autopsies to determine which died first. Although no one witnessed their deaths, it was apparent that the husband first shot the wife and then himself. There was testimony that the shots were three minutes apart. A pathologist testified that an autopsy would disclose whether each died instantly or lingered and the approximate time of the lingering. The Court held that before an autopsy will be ordered, it must be shown that there are good and substantial reasons for it and that the interests of justice will be promoted. The Court noted that presence of other sources of evidence will not necessarily preclude an autopsy but after reviewing cases from other jurisdictions, the Nebraska Court concluded that requests are generally denied where the court considers that under the evidence before it an autopsy would avail nothing. The Court then found that the evidence then before it was purely speculative as to who died first, and that there was a strong probability that an autopsy would firmly establish that fact. Accordingly, it ordered that the autopsy be performed.

Applying these principles to the case now before us, the question for determination is whether Company has made a showing that the causal relationship between decedent's hernia repair surgery and his heart failure could not be determined from the evidence before the board, and, further, that an autopsy would be likely to affirm or negate that causal link.

The only showing of necessity the Company made in its initial request to the Board was undocumented assertions that

(1) an attending physician had requested an autopsy; (2) an autopsy was necessary to "adequately and equitably determine the issues of this proceeding . . ."; (3) an autopsy was "imperative" to determine whether decedent's heart would have failed regardless of what went before; (4) the causal connection could not be shown with reasonable certainty from the history of the case; and (5) Company could not adequately prepare a defense without an autopsy. Despite a lapse of 16 months from decedent's death and four months from the time Yates filed her petition for benefits before Company filed its request, Company did not obtain or offer to the Board any medical evidence to confirm or lend credence to its assertion that there was a dispute concerning the causal relationship between the surgery and the heart failure and that an autopsy would be likely to resolve that dispute.

The testimony of Drs. Nelson and Wolfram offered at the evidentiary hearing held subsequent to the initial denial still did not demonstrate that an autopsy would even be somewhat helpful in establishing a causal link. Dr. Nelson testified directly that an autopsy would not be very helpful:

> Q. "Would an autopsy in this case have helped an analysis of the causal effects of the operation do you think as presenting the integrity of the artery, how strong the artery was or the occlusion, how large the occlusion was?
> A. I really doubt if it would help much."

Dr. Nelson did testify that an autopsy would show the presence or absence of atherosclerosis, but, as the discussion in Point I discloses, the critical question is whether the stress of the operation precipitated the coronary occlusion. Dr. Nelson testified that this would not be shown by an autopsy:

> Q. "An autopsy, Doctor, would have shown a pre-existing condition of his arteries would it not?
> A. Yes.
> Q. It would have shown the occlusion that he suffered?
> A. Yes.
> Q. Which ultimately led to the infarction which caused his death?

A. Yes.

Q. But would it have shown, Doctor, the amount of strain or stress or the source of it so that you could have determined anything from that?

A. No, I think in the autopsy state where stress is a dynamic term - - -

Q. It isn't something that is registered within the body?

A. That's right".

Dr. Wolfram testified that a person with atherosclerosis would be more susceptible to an occlusion, but never said whether or not an autopsy would be likely to show a causal connection in this case.

Under such circumstances, it was within the discretion of the Board to refuse the request for an autopsy. To recover benefits, Yates need not prove that the surgery was the *sole* proximate cause of her husband's death, but only that it was a proximate cause. *Noble County Highway Dept.* v. *Sorgenfrei* (1975), 163 Ind. App. 81, 321 N.E.2d 766. The Doctors' testimony indicates that an autopsy could not reasonably be expected to exclude surgery as a proximate cause of death.

Several cases from other jurisdictions in addition to those already cited have held that an autopsy is not essential where there is sufficient external evidence to support a doctor's opinion that there is a causal relationship between either strenuous work or surgery and subsequent heart failure, even when other doctors would draw a contrary inference. *See, Czankner* v. *Sky Top Lodge, Inc.* (1973), 13 Pa. Comwlth. 220, 308 A.2d 911 (heart failure two weeks after hernia repair) ; *Parks* v. *Winkler* (1962), 199 Pa. Super. 224, 184 A.2d 124 (heart failure following back surgery) ; *Fish* v. *Smithville Volunteer Fire Co.* (1960), 206 N.Y.S.2d 822, 12 A.D.2d 573 (collapse and death while fighting fire) ; *Southern Stevedoring Co.* v. *Henderson* (5th Cir. 1949), 175 F.2d 863 (employee suffered coronary thrombosis while in ship's hold, died 15 minutes after climbing 30 foot ladder to get out).

It is employer's position here that an autopsy *might* show that something other than the surgery induced the heart failure. Such speculative purpose in this writer's view of the evidence falls short of establishment of necessity sufficient to require the Board, as a matter of law, to order an autopsy.

While an autopsy might have resolved the matter to everyone's satisfaction, and may have avoided this appeal, the Company made no showing that an autopsy would probably remove doubt as to the causal relationship between the surgery and death.

Because there is sufficient credible evidence without an autopsy to establish that causal relationship, the Board did not err, in its exercise of discretion, by refusing to order the autopsy requested by employer.

The award of Industrial Board is affirmed.

Buchanan, P.J., concurs with separate statement; White, J., concurs with separate opinion in which Buchanan, P.J., joins.

## CONCURRING OPINION

WHITE, J.—Since it appeals quite probable that the right result has been reached, it is time to bring this protracted litigation to an end by affirming the award. I therefore concur in the result reached in the prevailing opinion but not in all that it says and implies.

The autopsy section (Ind. Ann. Stat. § 22-3-3-6 [Burns Code Ed., 1974]) of Indiana's Workmen's Compensation Act expressly confers upon employers a much broader right to an autopsy than is found in the statutes of some other states.[1] It provides that "[t]he employer upon proper application . . . shall have the right *in any case of death* to require an autopsy. . . ." (My italics.) It imposes no express condition upon that

---

.1. Contrast, e.g., the Tennessee statute paraphrased in the prevailing opinion following its citation of *Robinson* v. *Nashville Machine Co., Inc.* (1973), Tenn., 503 S.W.2d 90. It provides that "where the cause of death is obscure or is disputed, any interested party may require an autopsy."

right. The Appellate Court has, however, quite wisely held that there must be a necessity for the autopsy and that the request for it must be timely. *Vonnegut Hardware Co.* v. *Rose* (1918), 68 Ind. App. 385, 120 N.E. 608; *McDermid* v. *Pearson Co., Inc.* (1939), 107 Ind. App. 96, 21 N.E.2d 80.

What constitutes necessity for an autopsy has never been defined nor has the purpose of the condition been stated. However, it is clear that the employer's right to an autopsy could easily be abused if the surviving dependents were to be held to have forfeited their right to compensation by having refused permission in a case in which the cause of death was obvious. Thus the employer seeking an order for an autopsy should be required, at the minimum, to show by credible evidence that there is a reasonable possibility that such a post-mortem examination will yield evidence which may enable the Board to avoid an erroneous finding as to whether the death is or is not compensible. Requiring such a showing will prevent orders for autopsies being issued upon requests made primarily for the purpose of avoiding payment of compensation in event permission for the autopsy is refused. To require the showing of some higher degree of necessity would, of course, serve to relieve many more survivors of the emotional discomfort of an autopsy, but only at the expense of the employer's statutory, or contractual[2], right thereto. As was said in *Robinson* v. *Nashville Machine Company, Inc.* (1973), Tenn., 503 N.W.2d 90, 92, "the benefits and burdens of the [workmen's compensation] statute arise out of contract and one before the Court [or, as in Indiana, before the Board] claiming the benefits of the act must necessarily assume its burdens, including in a proper case the right of an employer to have an autopsy. . . ." As previously noted, that right in

2. "The rights and obligations arising under the [Indiana] Workmen's Compensation Act . . . [of 1929] are contractual in character. *Warren* v. *Indiana Telephone Co., supra* [(1940), 217 Ind. 93, 26 N.E.2d 399]. One seeking recovery under the act must bring himself within its terms." *Mid-Continent Petroleum Corp.* v. *Vicars* (1943), 221 Ind. 387, 393, 47 N.E.2d 972.

Indiana is not limited by statute, as in Tennessee, to cases where the cause of death is obscure or disputed.

At bar, the employer's initial request was timely, having been made at the earliest opportunity (which was also before interment). See *McDermid* v. *Pearson Co., Inc.* (1939), 107 Ind. App. 96, 99, 101, 21 N.E.2d 80; *Delaware Machinery & Tool Co.* v. *Yates* (1973), 158 Ind. App. 167, 301 N.E.2d 857, 39 Ind. Dec. 130. When that request was denied the employer dropped the matter. By so doing it waived its rights, whatever they may have been. *Ibid.* The employer should have immediately applied to a court of general civil jurisdiction in the county of preferred venue[3] for a restraining order to stay interment pending the Industrial Board's ruling on an application for an autopsy order which at the same time, the employer should have made to the Board.

### Concurring Opinion

Buchanan, P.J.—This case finds me bifurcated. I concur with Judge Sullivan as to Part I of his opinion and with Judge White as to his interpretation of the statutory right of the employer to require an autopsy, a right broadly given by statute (Ind. Code § 22-3-3-6 (1976)).

Judge Sullivan's strong-showing-of-necessity-test is completely inconsistent with the express language of the statute.

Note.—Reported at 351 N.E.2d 67.